Robinson, J.
 

 Plaintiff in error, John Zeller, hereinafter referred to as the defendant, was jointly indicted with Charles Cramer, Fred Davis and Charles Johnston for the murder of one Robert Clemons. The indictment contained a count of deliberate and premeditated malice, and a second count of murder while in the perpetration of a robbery. Zeller was tried separately, found guilty as charged, without recommendation of mercy, judgment entered on the verdict, and sentence pronounced. The judgment was affirmed in the Court of Appeals.
 

 The record discloses that on the evening of May 14,1930, the above four accused persons left the city of Cincinnati, in the same automobile, and drove to a point in Brown county, near the then residence of the decedent Clemons, where they all left the automobile and walked toward the Clemons home. After leaving the automobile, they secured wire from a telephone pole with which to bind Clemons. At a short distance from the Clemons home the party separated, two proceeding to the Clemons house and the other two returning to the automobile. The two who went to Clemons’ house induced him to come out of the house, and then attempted to rob him. He resisted and they both shot him, and one of them, Cramer, was shot by Clemons. Thereupon, the two who had done the shooting returned to the automobile, and the four together returned to Cincinnati.
 

 
 *521
 
 Cramer, Davis and Zeller were arrested next morning, and the same day Cramer and Davis were identified by Clemons as the persons who did the shooting. His identification was reduced to writing in the form of a dying statement, and signed by him. Clemons died on May 16th, of the injuries inflicted by two of the four above-named persons.
 

 After the identification of Cramer and Davis by Clemons, all three accused persons were taken to the jail in Brown county, and there, on the afternoon of May 14th, under a promise of reward, the defendant Zeller made and signed a statement in which he admitted his connection with the crime and implicated the other two, and also Johnston, and the next day went with the officers to Cincinnati to aid them in locating Johnston, and through his aid Johnston was apprehended. Soon after Zeller had made a statement, Davis made a statement, and later Johnston and Cramer made statements, all admitting some connection with the crime.
 

 Cramer was tried, convicted, and has since been executed. As between the other three, each, while admitting facts which would probably require a jury to find them guilty as charged in the second count of the indictment, sought or is seeking to place the actual killing upon Cramer and one other, not himself, in the hope that he may secure at the hands of the jury a recommendation of mercy.
 

 Johnston was not a witness in the trial of Zeller. There is no evidence in this record tending to prove that Johnston was physically present at the killing.
 

 Davis testified that he did not accompany Cramer to the place of killing, but that Zeller did. Zeller
 
 *522
 
 testified that lie did not accompany Cramer to the place of killing, bnt that Davis did. The evidence of these two vitally interested witnesses being in sharp conflict upon the subject of which one of the two physically participated in the killing, any incompetent evidence upon that issue antagonistic to the evidence of the defendant could not be otherwise than prejudicial.
 

 The state, in attempting to prove that Zeller was present at the actual killing, introduced evidence of an oral statement made by Cramer, who was not a witness at the trial, in which oral statement Cramer said that Zeller was present and participated in the killing. That statement of Cramer was made on the 20th day of May, in the office of the sheriff, in the presence of the sheriff and various witnesses, including Zeller. This was six days after Zeller had made and signed a statement of his version of the crime and his part in it, which statement purported to cover his movements and acts on the night of the crime; it was three days after Cramer, the last of the four to make a statement, had admitted his participation in the crime and had stated that Zeller was present and participated in the actual killing, and after each knew of the statement of the other, and immediately after Zeller had said to the sheriff and those present that he “had nothing to say other than what he had said.”
 

 Among other witnesses inquired of as to Cramer’s statement, the witness Ora M. Slater was inquired of and testified as follows:
 

 “Q. State to the jury what that accusation was, made in the presence of John Zeller, concerning the
 
 *523
 
 murder of Robert Clemons. A. After talking to John in there, the sheriff then brought Charles Cramer in and he was seated there on a chair. John had made the statement that he had nothing to say other than what he had said. He brought Charles Cramer in, who had previously confessed on the 17th, implicating John Zeller and we asked him then and there if John was the other party with him. He said yes. We asked him who had the other revolver; he said he had the thirty-eight and John Zeller the thirty-two. ’ ’
 

 “Q. State whether or not John Zeller made any answer to this. A. He did not say anything.”
 

 “Q. State whether or not he had the opportunity to make an answer if he so desired. A. He did.”
 

 All of this was objected to by the defendant, and a proper exception saved. This testimony was admitted by the court upon the theory that it was an admission by silence. No one advances a theory upon which the competency of the words, “who had previously confessed on the 17th, implicating John Zeller,” could then or now be based. The only theory upon which any confession by silence is admissible is that the statement of the third person, in the presence of the accused, is made under such circumstances that the silence of the accused gives rise to a natural and reasonable inference of assent thereto ; but in the instant case the circumstances disclosed by the record were such that they excluded every possibility of an inference of assent. The evidence was not competent for any purpose. Since this court, in the case of
 
 Howell
 
 v.
 
 State,
 
 102 Ohio St., 411, 131 N. E., 706, 17 A. L. R., 1108, has held that the discre
 
 *524
 
 tion of the jury to recommend mercy upon a conviction of first degree murder “should be exercised in view of all the facts and circumstances disclosed by the evidence,” such incompetent evidence, as tending to influence the jury in the performance of that function or in the exercise of that privilege, was prejudicial.
 

 Having found the admission of the evidence to be erroneous, we do not reach the question of the language used by the court in submitting that evidence to the jury.
 

 The judgments of the lower courts will be reversed, and the cause remanded.
 

 Judgment reversed cmd cause remanded.
 

 Jones, Matthias, Allen and Kinkade, JJ., concur.