The STATE of Ohio, Appellee,

v.

ENGLISH, Appellant.

[Cite as *State v. English* (1993), 85 Ohio App.3d 471.]

Court of Appeals of Ohio,
Montgomery County.

No. 13595.

Decided March 26, 1993.

*Mathias H. Heck, Jr.*, Montgomery County Prosecuting Attorney, and *Sharon W. Murphy*, Assistant Prosecuting Attorney, for appellee.

*Marlena L. Pankowski*, for appellant.

WOLFF, Judge.

Bobby English was found guilty, pursuant to his plea of no contest, of carrying a concealed weapon. The trial court imposed and suspended an eighteen-month sentence and placed English on five years' probation. English advances a single assignment of error on appeal:

"The trial court committed prejudicial error in overruling appellant's motion to suppress because the evidence seized by the Dayton police was the fruit of an illegal search and seizure in violation of Article I, Section 14 of the Ohio Constitution and the Fourth and Fourteenth Amendments of the United States Constitution."

The issue on appeal is whether the Dayton Police had a sufficient basis upon which to stop an automobile driven by English.

The stop was made on the sole basis of a police dispatch that English was in possession of a gun. Prior to stopping him, the arresting officers had not verified that English possessed a gun, and English had broken no law and had not made any furtive or unusual movements in their presence.

The police dispatch to which the arresting officers responded directed them to come to a parking lot at 3000 Haberer, at the intersection of Haberer and Blanch, and stated that Bobby English was in the parking lot in a black 1982 Datsun with the letters CYU on the license plate, and that English had a gun on his person or in the glove box. Another police officer, Gary Pilgrim, had, prior to hearing the dispatch, seen English leave the parking lot in a cream-colored Buick. Upon hearing the dispatch, Officer Pilgrim got on the radio and reported that English was in a cream-colored Buick that was being followed by a black Datsun.

Later, the arresting officers observed English in the Buick and stopped him. A subsequent search of the car produced a firearm and resulted in arrest.

The police dispatch was based on a phone call to the police from an unidentified woman who confirmed in response to a question from the dispatcher that her address was 3011 Lakeridge. The caller stated in effect that she lived at 3011 Lakeridge, and she asked somewhat excitedly that the police not come to her home. She told the dispatcher that English and a confederate were within her view in a parking lot at 3011 Haberer, which was "behind [her] house." She described both the Datsun and the Buick, which she said were in the lot. She said that English and the confederate were both dope dealers and that English kept dope in both cars. She said there was a gun in the Datsun, and that English owned two guns. She told the dispatcher that she had previously told the police about the gun in the Datsun the previous evening or that morning. She then reported that both cars had exited the lot, but that she didn't know in what direction, and that English was in the Datsun.

 Assuming for the moment that the phone call was in the nature of an anonymous tip, it was insufficient to furnish the Dayton Police with a reasonable and articulable suspicion that English was in possession of a gun or drugs. The caller furnished the police with no basis for her statement that English was in possession of a gun or drugs. Notwithstanding the state's contention to the contrary, she did not furnish the police with any "inside information" about English which, if verified by the police prior to their stopping English, would have lent reliability to her tip. See *Alabama v. White* (1990), 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301. We have listened to the tape recording of her call to the police. The caller's statement to the effect that English and his confederate were leaving the parking lot pertained to an observation the caller could have made from her vantage point and implied no knowledge of English's future behavior. Nor did any behavior by English lend reliability to her tip. Cf. *State v. Haney* (May 6, 1992), Greene App. Nos. 91CA54 and 91CA55, unreported, 1992 WL 95351.

The trial court characterized the caller as anonymous. In defending the action of the trial court, the state argues that the caller was entitled, for reliability purposes, to the greater status of a known informant. See *Adams v. Williams* (1972), 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612. The basis for the state's position is the fact that the caller provided the police with her home address, thus providing reliability to her information because of a realization on her part that the police could find her if her information proved to be false.

In *State v. Ramsey* (Sept. 20, 1990), Franklin App. Nos. 89AP–1298 and 89AP–1299, unreported, 1990 WL 135867, the appellate court reversed a conviction in a case wherein the trial court had overruled a motion to suppress. In *Ramsey*, the

police stopped a vehicle solely on the basis of information reported to the police by a caller who left her name and phone number. In *Ramsey,* as in this case, the caller's information was insufficient to furnish the police with a sufficient basis for an investigative stop. The Court of Appeals for Franklin County ruled that "the fact that the [otherwise unknown] caller left her name and phone number does not significantly add to the reliability of the tip in this case." In this case, as in *Ramsey,* it might be said that the callers, having provided some personal information, were thereby not totally anonymous. By the same token, it cannot be said that the callers in *Ramsey* and in this case were "known" to the police in the same way as was the informant in *Adams,* who had a track record with the police for providing information. The court in *Ramsey* explained why it accorded little significance to the fact that the caller had left her name and number as follows:

"[T]he fact that the caller left her name and phone number does not significantly add to the reliability of the tip in this case. Unlike a crime scene report, the police did not talk to the citizen-informant personally, nor did they even know for certain that a crime had been committed as is the case in the citizen-eyewitness cases. Moreover, there is no indication in the record that the police even attempted to verify the caller's identity. Reliability may be established in the case of an identified informant by the mere fact that the informant is probably aware of the penalties associated with making a false police report. In this case, however, *there is no indication in the record that the informant could actually be identified in the future should the report turn out to be maliciously made.*" (Emphasis added.)

■ There is no bright-line test for determining whether an informant's information is sufficiently reliable to furnish a basis for an investigative stop. See *Adams, supra,* 407 U.S. at 147, 92 S.Ct. at 1923, 32 L.Ed.2d at 617–618.

■ In our judgment, the record here, unlike the record in *Ramsey,* does indicate that the caller furnished the police with sufficient information to enable the police to identify her and to locate her should her information have proven to be false. Not only did she state that 3011 Lakeridge was her home, she expressed great concern about the police coming to her home and presumably thereby exposing her as an informant, and further exposing her to possible recrimination. This concern tended to verify that 3011 Lakeridge was indeed the caller's home. The fact that the caller provided her home address to the police thus did, as the state contends, lend credibility to the caller's information because she would have been less likely to provide false information than had she been cloaked with complete anonymity.

In this close case, we conclude that the trial court properly determined that the caller's information was of sufficient reliability to furnish the police with justification to stop the Buick that English was driving. The motion to suppress was properly overruled.

The assignment of error is overruled.

The judgment will be affirmed.

*Judgment affirmed.*

FAIN and FREDERICK N. YOUNG, JJ., concur.