**The STATE of Ohio, Appellee,**

v.

**WHITE, Appellant.**

[Cite as *State v. White* (1996), 110 Ohio App.3d 347.]

Court of Appeals of Ohio,
Fourth District, Scioto County.

No. 95 CA 2325.

Decided April 10, 1996.

348

*R. Randolph Rumble,* Scioto County Assistant Prosecuting Attorney, for appellee.

*Joseph L. Hale,* for appellant.

PETER B. ABELE, Presiding Judge.

This is an appeal from a judgment of conviction and sentence entered by the Scioto County Common Pleas Court finding Jay L. White, defendant below and appellant herein, guilty of aggravated trafficking in violation of R.C. 2925.03(A)(2), (C)(2) and (H)(6).

Appellant assigns the following error:

"The trial court committed reversible error by failing to sustain the defendant-appellant's motion to suppress the evidence in that evidence obtained as a result of the search should have been suppressed by the trial court as having been obtained in violation of the defendant-appellant's Fourth Amendment rights under the United States Constitution."

The Scioto County Grand Jury indicted appellant on one count of aggravated trafficking. On June 7, 1994, appellant filed a motion to suppress evidence. On July 15, 1994, appellant filed an amended motion to suppress evidence.

In his motion to suppress evidence, appellant asserted that the officers did not have a sufficient constitutional basis to perform a warrantless search. At the hearing on the motion, the parties presented evidence regarding the officers' encounter with appellant. The evidence adduced at the hearing revealed that on the morning of March 8, 1994, Portsmouth Police Officer David Bennett was parked near the 1000 block of Waller Street in Portsmouth. An informant approached his car. Officer Bennett stated that he had received reliable information from the informant in the past. Officer Bennett further testified that the informant advised him that the appellant was selling crack cocaine at the corner of 14th and Waller Street and that he was armed. Officer Bennett testified that this particular street corner is located within a high-crime area.

Officer Bennett drove to the intersection of 14th and Waller where he in fact encountered appellant. After telling appellant about the informant's information, Officer Bennett attempted to pat appellant down. Officer Bennett testified that during the attempted pat-down, appellant "kept passing stuff from hand to hand and going in and out of his pockets." In order to pat down appellant to Officer Bennett's satisfaction, Officer Bennett placed appellant in the police cruiser and called for assistance. Officer Bennett did not, however, place appellant in the cruiser until Officer Bennett was "pretty well convinced he [appellant] didn't have a weapon."

Officer Todd Bryant and Captain William Hanley responded to Officer Bennett's call for assistance. Upon request, appellant got out of the cruiser, turned around, and placed his hands on top of the cruiser. Officer Bryant testified that Officer Bennett indicated that appellant might be armed. When Officer Bryant patted down appellant, Officer Bryant found fourteen rocks of crack cocaine in appellant's left sock.

When asked at the hearing to describe what he found, Officer Bryant said the crack cocaine was ball-shaped with a diameter slightly larger than a quarter.[1]

---

1. At the suppression hearing, Officer Bryant testified as follows:
 "By Mr. Hale:
 "Q. And what was the purpose of that pat-down search?
 "A. To search for guns or drugs.
 "Q. Is that your understanding of the purpose of a patdown, is to search for a weapon and/or drugs?
 "A. Based on the information that we had received, that's what I was looking for, yes.
 "Q. And where did you locate the crack?
 "A. In his left sock.
 "Q. Now, how many rocks were there?
 "A. Fourteen.
 "Q. Just to give me some idea, how big of an object would 14 rocks of crack cocaine be?
 "A. When it's balled up, if you take—probably a little bit bigger than a quarter and round it out like a marble or something."

Neither party asked Officer Bryant to testify whether the ball felt hard or soft, whether he thought it might be a weapon, or whether he knew from his prior experience as a police officer that what he felt was obviously and unmistakably crack cocaine. The officers did not find a weapon during their search of appellant.

On July 28, 1994, the court overruled appellant's motion to suppress evidence. On September 7, 1994, appellant withdrew his plea of not guilty and entered a plea of no contest. The court found appellant guilty as charged. On December 5, 1994, the court sentenced appellant. Appellant filed a timely notice of appeal.

In his sole assignment of error, appellant asserts that the trial court erred by overruling appellant's motion to suppress the evidence found on him during the pat-down search. Appellant does not contest the propriety of the *Terry* stop. Rather, appellant contends that the ensuing pat-down search for weapons exceeded the scope of a permissible protective search. Appellant asserts that the officers searched appellant for evidence of crime rather than for weapons. Appellee argues that the officers had a reasonable suspicion of criminal activity justifying the pat-down search. Appellee does not, however, discuss the permissible scope of the pat-down search.

Initially, we note that in a hearing on a motion to suppress evidence, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate the credibility of witnesses. *State v. Robinson* (1994), 98 Ohio App.3d 560, 649 N.E.2d 18; *State v. Rossiter* (1993), 88 Ohio App.3d 162, 623 N.E.2d 645; *State v. Lewis* (1992), 78 Ohio App.3d 518, 605 N.E.2d 451; *State v. Warren* (Aug. 12, 1991), Hocking App. No. 90CA7, unreported, 1991 WL 156521. Thus, the credibility of witnesses during a motion to suppress evidence hearing is a matter for the trial court. A reviewing court should not disturb the trial court's findings on the issue of credibility. *State v. Mills* (1992), 62 Ohio St.3d 357, 582 N.E.2d 972; *State v. Fanning* (1982), 1 Ohio St.3d 19, 1 OBR 57, 437 N.E.2d 583. While we are bound to accept any findings of fact by the trial court which are supported by competent, credible evidence, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether the findings of fact meet the appropriate legal standard. See *State v. Harris* (1994), 98 Ohio App.3d 543, 649 N.E.2d 7; *State v. Shelpman* (May 23, 1991), Ross App. No. 1632, unreported, 1991 WL 87312; *State v. Simmons* (Aug. 3, 1990), Washington App. No. 89CA18, unreported, 1990 WL 127065.

In the case *sub judice*, the facts are not in dispute. Officer Bennett stopped appellant based upon two factors: (1) the tip of a known informant that appellant was carrying a concealed weapon and selling drugs, and (2) the high level of

criminal activity in the area in which Officer Bennett found appellant. Subsequently, the officers searched appellant and found money and cocaine.

The Fourth and Fourteenth Amendments to the United States Constitution as well as Section 14, Article I of the Ohio Constitution prohibit any governmental search or seizure unless supported by an objective justification. *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; *State v. Lindway* (1936), 131 Ohio St. 166, 5 O.O. 538, 2 N.E.2d 490; *State v. Andrews* (1991), 57 Ohio St.3d 86, 87, 565 N.E.2d 1271, 1272. "[I]t is a cardinal principle that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject to only a few specifically established and well-delineated exceptions.'" *Mincey v. Arizona* (1978), 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290; *S. Dakota v. Opperman* (1976), 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000; *State v. Halczyszak* (1986), 25 Ohio St.3d 301, 25 OBR 360, 496 N.E.2d 925; and *State v. Tincher* (1988), 47 Ohio App.3d 188, 548 N.E.2d 251. If evidence is obtained in violation of the Fourth Amendment, exclusion of the evidence is mandated. *Mapp v. Ohio* (1961), 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081.

In *Terry v. Ohio, supra,* the United States Supreme Court ruled that an exception to the warrant requirement exists when a police officer has a reasonable suspicion that an individual is engaged in criminal activity. The police officer may briefly stop the individual for questioning. *State v. Andrews, supra,* 57 Ohio St.3d at 87, 565 N.E.2d at 1272–1273. In order to justify a brief investigative stop under *Terry,* the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. *State v. Williams* (1990), 51 Ohio St.3d 58, 60, 554 N.E.2d 108, 111. The propriety of an investigative stop by a police officer must be viewed in light of the totality of the circumstances. *State v. Bobo* (1988), 37 Ohio St.3d 177, 524 N.E.2d 489, paragraph one of the syllabus. The court must determine what a reasonable police officer would do in a given situation.

In the case *sub judice,* we agree with appellee and appellant that Officer Bennett was justified in stopping appellant for questioning. Under *Terry,* a police officer must have a reasonable suspicion that the detainee is committing or has committed a crime. At the suppression hearing, Officer Bennett testified about the information contained in the tip and about the high level of drug activity in the area. Officer Bennett stated that he knew the informant and that he had received reliable information from him in the past. Although there is no bright-line test for determining whether an informant's information is sufficiently reliable to furnish a basis for an investigative stop, it is well established that information outside an officer's own observations, including tips, may supply the

reasonable suspicion necessary to justify initiating such a stop. *State v. English* (1993), 85 Ohio App.3d 471, 474, 620 N.E.2d 125, 127, citing *Adams v. Williams* (1972), 407 U.S. 143, 147, 92 S.Ct. 1921, 1923–1924, 32 L.Ed.2d 612, 617–618; *State v. Wilks* (Sept. 30, 1993), Montgomery App. No. 13654, unreported, 1993 WL 386246. Information supplied by a confidential informant may constitute an articulable fact upon which a reasonable suspicion may be based. *State v. Haupricht* (Aug. 3, 1990), Lucas App. No. L–89–202, unreported, 1990 WL 109965, citing *United States v. Hensley* (1985), 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604.

[5] In the instant case, Officer Bennett knew the informant, and the given information was specific as to both the person and the crime. In *Adams, supra,* the United States Supreme Court upheld the legality of a *Terry* stop-and-frisk search based on the tip of a known informant. 407 U.S. at 146–147, 92 S.Ct. at 1923–1924, 32 L.Ed.2d at 617–618. Drug activity and criminal activity in general are articulable facts that factor into the totality of the circumstances surrounding a stop to investigate suspicious behavior. *Andrews, supra,* 57 Ohio St.3d at 88, 565 N.E.2d at 1273–1274, citing *Bobo,* 37 Ohio St.3d at 179, 524 N.E.2d at 491, and *State v. Freeman* (1980), 64 Ohio St.2d 291, 18 O.O.3d 472, 414 N.E.2d 1044. Under the facts in this case, an investigative *Terry* stop of appellant was justified.

Our inquiry does not end at this juncture, however. We must now decide whether the ensuing pat-down search violated appellant's Fourth Amendment rights. We again note that appellant does not contest the validity of the initial *Terry* stop. Appellant argues, however, that because the officers who searched him were looking for evidence as well as any hidden weapons, the search exceeded the scope allowed by *Terry.* Appellee does not address the issue regarding the permissible scope of a *Terry* pat-down search.

Under *Terry,* a police officer may conduct a protective pat-down search of a detainee's person for concealed weapons when the officer has a reasonable suspicion that the suspect is armed and dangerous. *Terry, supra,* 392 U.S. at 24, 88 S.Ct. at 1881, 20 L.Ed.2d at 907–908; *Bobo, supra.* "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence * * *." *Adams, supra,* 407 U.S. at 146, 92 S.Ct. at 1923, 32 L.Ed.2d at 617. Thus, *Terry* limits the search's scope to looking for weapons that could pose a risk to the officer's safety during the stop.[2]

---

2. 3 LaFave, Search and Seizure (2d Ed.1987) 520, Section 9.4(b), is instructive on this point:

"The limited search permitted by *Terry,* it is important to remember, is to find weapons 'for the assault of the police officer,' not merely to find weapons; thus there is no reason to cover every·square inch of the suspect's body. The need is only to find the implements which could

Additionally, in *State v. Evans* (1993), 67 Ohio St.3d 405, 618 N.E.2d 162, the court noted that contraband evidence found during a *Terry* search may be admissible in evidence. In *Evans* the court addressed situations in which a police officer feels a hard object and *is unable to determine that the object is not a weapon.* Under *Evans*, if the unknown object is hard, and its size or density is such that it might be a weapon, the officer may remove the object to ensure his safety. 3 LaFave, Search and Seizure, at 523, Section 9.4(c), is instructive on this point as well:

"Under the better view, then, a search is not permissible when the object felt is soft in nature. If the object felt is hard, then the question is whether its 'size or density' is such that it might be a weapon. But because 'weapons are not always of an easily discernible shape,' it is not inevitably essential that the officer feel the outline of a pistol or something of that nature. Somewhat more leeway must be allowed upon 'the feeling of a hard object of substantial size, the precise shape or nature of which is not discernible through outer clothing,' which is most likely to occur when the suspect is wearing heavy clothing. Under this approach, courts have upheld as proper searches which turned up certain objects other than guns, such as a pocket tape recorder, a pipe, a pair of pliers, cigarette lighter, several keys taped together, or a prescription bottle. In making a judgment on this issue, some courts take into account other evidence bearing upon whether it appears the officer was acting in good faith, such as whether the object felt more

readily be grasped by the suspect during the brief face-to-face encounter, not to uncover items which are cleverly concealed and which could be brought out only with considerable delay and difficulty. By contrast, the on-the-scene search of a person who has been arrested and who is to be transported to the station (often unwatched in the rear of a police van), also frequently referred to as a 'frisk,' must be more extensive because the arrestee may well have an opportunity to get his hands on a carefully concealed weapon. The difference between the two situations is appreciated by the police, who normally pat down only around the armpits and pockets during a stopping for investigation, but make a more detailed search after arrest.

"If during a lawful pat-down an officer feels an object which obviously is not a weapon, further 'patting' of it is not permissible. Illustrative is *State v. Hobart*, where an officer, after feeling spongy objects in the suspect's pockets, squeezed them and determined they were balloons probably containing narcotics. The court concluded:

"'However, from his own description of the search which he made, it is evident that its scope was not strictly limited to a search for weapons, but included an exploration of the possibility that the defendant might be in possession of narcotics. Having discovered "spongy" objects (which could not reasonably be feared as dangerous weapons) in the defendant's pockets, the officer squeezed them, with the obvious purpose of ascertaining whether they had the shape and consistency of balloons commonly used for narcotics. Such a search reaches beyond the scope permitted under the Fourth Amendment, adding to the search for weapons a search for evidence of crime.'

"Moreover, once the pat-down has determined that the suspect is not armed, the police may not without probable cause once again search the suspect and confiscate the contents of his pockets." (Footnotes omitted.)

like an item of evidence the officer apparently suspected the person might have on him than a weapon." (Footnotes omitted.)

■ Thus, if during a pat-down search an officer feels a hard object that may be a weapon, but the object turns out to be contraband, that contraband may properly be admitted in evidence. In this type of situation the search involved no greater invasion of the detainee's privacy than was already warranted by the pat-down.

■ In the instant case, we find no evidence in the record indicating whether the "balled up" object on appellant's person was hard or soft, or whether the officers feared that this object might be a weapon. The record contains no evidence that when Officer Bryant felt the unknown object under appellant's sock, he felt something hard of sufficient size and density to be a weapon. Officer Bryant testified that he searched appellant for both drugs and weapons. *Terry* does not permit searches for drugs. In *State v. Moon* (1991), 74 Ohio App.3d 162, 166, 598 N.E.2d 726, 729, the court discussed the permissible scope of a *Terry* frisk for weapons as follows:

"The trial court's resort to the intermediate 'stop and frisk' standard is problematic. Officer Rewak did not suggest, and it does not appear likely, that he removed Moon's cap and searched its lining because he feared that a readily accessible weapon was hidden therein. To the contrary, Detective Resendez indicated at the hearing that the search was for 'contraband.' As far as we are aware, an investigative 'stop and frisk' of a person exclusively for drugs has never been constitutionally permissible absent 'probable cause' to suspect criminal activity."

■ Thus, in the absence of evidence establishing the fact that an officer, while conducting a lawful *Terry* pat-down search, believed that an unknown object might be a weapon, the officer's search of the suspect exceeds the permissible scope of the *Terry* search doctrine.

■ We note that other permissible bases may exist for the search beyond the *Terry* exception to the warrant requirement. In *Minnesota v. Dickerson* (1993), 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334, the court addressed situations in which a police officer, while conducting a lawful *Terry* stop-and-frisk search, feels an object "whose contour or mass makes its identity immediately apparent." In such situations, the court noted:

"[T]here has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure [is] justified by the same practical considerations that inhere

in the plain-view context." (Footnote omitted.) *Dickerson,* 508 U.S. at 375–376, 113 S.Ct. at 2137, 124 L.Ed.2d at 346.

This "plain feel" exception to the warrant requirement allows the state to use evidence seized during a *Terry* search if the police officer, due to his experience arresting drug offenders, feels contraband whose contour or mass makes its identity "immediately apparent" to him.

In the case at bar, we note that the testimony adduced at the suppression hearing failed to shed light on what Officer Bryant thought he felt underneath appellant's sock. We find no evidence in the record to establish that when Officer Bryant patted the crack cocaine, its identity was "immediately apparent" to him.

The result in this case is regrettable. We are keenly aware that the drug problem poses a great threat to our nation and that the deterrence of drug activity is an overwhelming public concern. We note, however, that in *Weeks v. United States* (1914), 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652, the United States Supreme Court adopted the exclusionary rule. The court held that evidence obtained in violation of an accused's Fourth Amendment rights could not be used in a federal criminal prosecution against him. The court noted that while efforts to bring the guilty to punishment are praiseworthy, those efforts "are not to be aided by the sacrifice of those great principles established by years of endeavor and suffering which have resulted in their embodiment in the fundamental law of the land." *Id.* at 393, 34 S.Ct. at 344, 58 L.Ed. at 655–656. In 1961, the court extended the exclusionary rule for Fourth Amendment violations to state criminal proceedings. *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081. As an intermediate level appellate court, we are obligated to follow decisions rendered by the United States Supreme Court.

In *State v. Carter* (1994), 69 Ohio St.3d 57, 69, 630 N.E.2d 355, 365, the court quoted from Dworkin, Fact Style Adjudication and the Fourth Amendment: The Limits of Lawyering (1973), 48 Ind.L.J. 329, 330–331, regarding the exclusionary rule as follows:

" 'The critics [of the exclusionary rule] forget that neither the rule nor the fourth amendment exists to protect the criminal in whose case the rule is applied. Both exist to protect society—all those citizens who never break laws more serious than those prohibiting overtime parking. * * * Narrowly viewed, the exclusionary rule is very unattractive, because in the vast majority of cases in which it is applied the immediate result is to free an obviously guilty person. But the guilty defendant is freed to protect the rest of us from unlawful police invasions of our security and to maintain the integrity of our institutions. Thus to suggest that the exclusionary rule fails to aid the innocent or that society

rather than the policeman suffers for the policeman's transgression is nonsense. The innocent and society are the principal beneficiaries of the exclusionary rule.' "

Accordingly, based on the foregoing reasons, we sustain appellant's assignment of error.

*Judgment reversed.*

STEPHENSON, J., concurs separately.

KLINE, J., dissents.

STEPHENSON, Judge, concurring.

I concur in the judgment of the principal opinion, but write separately in order to clarify my own reasons for ordering suppression of the evidence seized from appellant. Our first order of business should be to precisely define the narrow issue presented for review herein. There is no dispute in the cause *sub judice* concerning either the initial *Terry*-type investigatory stop of appellant or the subsequent pat-down he received to determine if he was carrying any weapons. Appellant has not challenged the propriety of either procedure in this case. Thus, while I generally agree with the principal opinion that the investigatory stop and subsequent weapons pat down were legally permissible in the present case, I would not dwell on the subject for too long. It tends to confuse the issues and distracts our attention from the real crux of this appeal.

The sole question before us in this case is whether the police exceeded the permissible scope of a weapons pat-down. We already know from a variety of seminal Supreme Court cases that such a search is permitted "for the protection of the police officer" where said officer has reason to believe that the suspect is armed and dangerous. See, *e.g., Terry v. Ohio* (1968), 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889, 909; *Minnesota v. Dickerson* (1993), 508 U.S. 366, 373, 113 S.Ct. 2130, 2136, 124 L.Ed.2d 334, 344. However, the permissible scope of this type of search is quite narrow. "The search for weapons approved in *Terry* consists solely of a limited patting of the outer clothing of the suspect for concealed objects which might be used as instruments of assault." *Sibron v. New York* (1968), 392 U.S. 40, 65, 88 S.Ct. 1889, 1904, 20 L.Ed.2d 917, 936. A *Terry*-type frisk or search "is not a search for evidence; it is only a *limited* search for weapons." (Emphasis added.) Katz, Ohio Arrest, Search and Seizure (1996 Ed.) 267, Section T 14.04. With this standard in mind, I would note the following admission by one of the police officers at the suppression hearing below:

"Q. And what was the purpose of that pat-down search?

"A. To search for guns or *drugs.*

"Q. Is that your understanding of the purpose of a patdown, is to search for a weapon and/or *drugs?*

"A. Based on the information that we had received, that's what I was looking for, yes." (Emphasis added.)

As discussed above, the sole justification for a *Terry*-type pat-down is to search for weapons which could be used to assault police or someone else during the ensuing investigation. It cannot under any circumstances be used as a subterfuge to search a suspect for evidence. The admitted evidentiary search conducted by the Portsmouth police officers in the cause *sub judice* was clearly and unequivocally improper.

I concede that, under the so-called "plain feel" doctrine recently enunciated by the United States Supreme Court in *Dickerson, supra,* items seized during a *Terry*-type pat-down may still be used as evidence if the contour or mass of the items rendered it immediately apparent as contraband during the search. However, the Supreme Court has also made clear that this doctrine applies only to evidence/contraband found within the original and permissible scope of the search. *Dickerson,* 508 U.S. at 374, 113 S.Ct. at 2136, 124 L.Ed.2d at 344. It does not apply to contraband found and seized outside the scope of a permissible *Terry*-type pat-down. Thus, the pertinent inquiry in the cause *sub judice* is whether the crack cocaine discovered on appellant's person was found within the original and permissible scope of a *Terry* pat-down. It seems manifestly obvious to me that it was not.

The uncontroverted evidence below was that the drugs were concealed between two layers of socks appellant wore on his left foot. He was also wearing high-top tennis shoes at the time he was searched. Given that the purpose of a *Terry*-type pat-down is to discover and remove weapons immediately available to the suspect, the search of appellant's footwear at that juncture went way beyond what was necessary at that point in time. A review of case law construing the recent United States Supreme Court holding in *Dickerson* reveals that the contraband seized in those cases were "bulges" found in pockets or jackets. See, *e.g., State v. Hunter* (1994), 98 Ohio App.3d 632, 636, 649 N.E.2d 289, 292; *State v. Richardson* (1994), 94 Ohio App.3d 501, 510, 641 N.E.2d 216, 221–222. Such seizures are much more defensible than the one in this case because those "bulges" in pockets or jackets could just as easily have been a weapon. However, even if the crack cocaine in the cause *sub judice* had been a weapon, it posed little risk of harm to the police while it was secreted away between layers of socks inside hightop tennis shoes. An "effort to uncover contraband," conducted under the guise of a *Terry* or *Dickerson* type search, will not be tolerated. See *State v. Cloud* (1993), 91 Ohio App.3d 366, 370, 632 N.E.2d 932, 934–935.

For all these reasons, I concur with the judgment of the principal opinion and join in reversing the conviction below.

KLINE, Judge, dissenting.

I respectfully dissent. I agree that this search exceeded *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. However, I further believe that the officers had probable cause to suspect criminal activity.

If the officers had probable cause to arrest and search appellant, then the seized contraband would be admissible in evidence. See *United States v. Robinson* (1973), 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427; *Chimel v. California* (1969), 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685. Probable cause is determined by the totality of the circumstances. See *Illinois v. Gates* (1983), 462 U.S. 213, 232–233, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527, 544–545. The facts available to the officers at the time of the arrest must warrant a man of reasonable caution in believing that an offense has been committed. *Beck v. Ohio* (1964), 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142.

After reviewing the totality of the circumstances in the present case, it is my opinion that probable cause of criminal activity is established by the following facts that were available to the officers. First, the informant gave the one officer the following information: (1) the name of appellant, (2) appellant was selling crack, (3) the exact location, and (4) appellant had a weapon. The same officer had received reliable information from this same informant in the past. Furthermore, appellant, upon cross-examination of the officer, never questioned the reliability of this informant. Second, the reaction of the appellant when he saw the officer gave rise to reasonable suspicion. The officer testified that "when he saw me coming up, he turned around and started walking north." Third, the location was known as the busiest corner for crack cocaine activity in the city. And, fourth, there was an adoptive admission by the appellant that he was selling drugs.

The unique part of the case *sub judice* is that the appellant inadvertently introduced the adoptive admission into evidence at the hearing on the motion to suppress. The appellant, not the officer, testified that the officer at the scene accused him of two things: (1) selling drugs, and (2) having a weapon. Appellant testified that he denied having a weapon. Appellant did not testify that he denied selling drugs. Specifically, appellant testified: "Well, when he arrived, he asked me, he said, 'I heard you was selling, that you had a gun,' and I told him, 'I don't—I don't have a gun. I don't even own a gun.'" Based on the adoptive admission rule, it is my position that the appellant admitted selling drugs because of his silence or lack of a denial of the officer's allegation.

The adoptive admission rule is stated in Evid.R. 801(D)(2)(b). That rule provides that a statement is not hearsay, and thus admissible, if it is offered against a party and is a statement of which he has manifested his adoption or belief in its truth. However, the statement in the case *sub judice* was admitted at the hearing on the motion to suppress. Therefore, the issue is not whether the statement is admissible. Rather, the issue is whether the statement was an adoptive admission that helped to establish probable cause of criminal activity.

The Staff Note to Evid.R. 801(D)(2)(b) states as follows:

" * * * An adoptive admission, or an admission by acquiescence, consists of a statement by a non-party which may be deemed to be that of a party by virtue of the failure of the party to deny the statement. * * * [I]n applying the rule, courts have been careful to consider the circumstances under which the utterance is made to insure that the party understood the utterance, that he was free to make a response, and that a reasonable person would have denied the statement. * * * "

The Ohio Supreme Court has defined an adoptive admission as follows: A person admits the truth of a statement by adoption when that person hears, understands, and acquiesces in another person's statement when a reasonable person could and would have spoken out in denial.[1] *Zeller v. State* (1931), 123 Ohio St. 519, 176 N.E. 81. See, also, *State v. Kidder* (1987), 32 Ohio St.3d 279, 513 N.E.2d 311.

The United States Supreme Court has held that every postarrest silence is inherently ambiguous because silence in the wake of *Miranda* warnings might mean that the arrestee is exercising his right to remain silent. See *Doyle v. Ohio* (1976), 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91, and *Kidder, supra.* In determining whether silence is an adoptive admission in criminal cases, courts should exercise the utmost care to see that the prerequisites have been proven. It is important to note in the case *sub judice* that the *Miranda* warnings were not given at the time the officer made the statement that appellant adopted.

The requirements for an adoptive admission pursuant to *Zeller* have been met. While the facts are unique because this testimony came from the appellant and not the officer, the fact that appellant testified about the statement is the very

---

1. There are five prerequisites:
 1. the statement must be shown to have been heard by the opponent,
 2. the statement must have been understood by the opponent,
 3. the statement's subject must be something within the opponent's knowledge,
 4. there must be no physical or emotional impediment to a response by the opponent, and
 5. the circumstances of the statement, the situation in which it is uttered, and the circumstances of the opponent himself must be considered. Gianelli, Ohio Evidence Manual (1982), Section 801.12; McCormick, Evidence (2 Ed. Cleary Ed.1972) 653, Section 270.

thing that makes it easy to show that the requirements of *Zeller* are met. Appellant had to hear and understand the officer's statement or he could not have testified about it. He acquiesced in the statement because he did not deny it as he did the weapon allegation. Why would he deny the weapon allegation and not the allegation of selling drugs? I cannot think of a good reason.

Therefore, it is my opinion that the requirements for an adoptive admission by the appellant of selling drugs have been met and that the adoptive admission is one factor that helped to establish probable cause of criminal activity. Accordingly, I would overrule the assignment of error and affirm the judgment of the trial court.