JUDGMENT ENTRY.
This appeal is considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, and this Judgment Entry shall not be considered an Opinion of the Court pursuant to S.Ct.R.Rep.Op. 3(A).
Plaintiff-appellee, the state of Ohio, appeals from the judgment of the Hamilton County Municipal Court granting defendant-appellee Charles Mann's motion to suppress Vicodin seized from the glove compartment of his girlfriend's car.
On December 15, 2002, a Cincinnati police officer received a tip from a confidential informant that drug sales were taking place in a high-crime area of the city. The informant stated that "dope" was being sold from a brown Ford Taurus, parked next to Martin's Bar on Green Street, and that the dope could be found in the glove compartment. The informant had provided reliable information in the past, and the officer, along with several fellow officers, sought to confirm the informant's tip by traveling to the location specified.
When the officers arrived, they observed a Ford Taurus fitting the description given them and set up a covert surveillance of the area. During their surveillance, the officers observed a man, later identified as Mann, and another individual approach the car. The officers saw Mann enter the car on the passenger side and sit down with his feet outside the car. They saw Mann in the area of the glove compartment, but they could not tell if he actually opened the glove compartment. The other individual remained standing a few feet away. The officers, who believed they were witnessing a drug transaction, approached the two men and read Mann his Miranda rights. When the officers questioned Mann, they learned that Mann's girlfriend owned the car, but that he had keys to the car. When the officers asked Mann's permission to search the car, he consented. During their search of the glove compartment, the officers discovered, wrapped in a paper napkin, seven units of Vicodin, a prescription drug for which Mann had no prescription.
Mann was arrested and charged with possession of dangerous drugs in violation of Cincinnati Municipal Code 601-23. Following a plea of not guilty, Mann moved to suppress the evidence based on his belief that the police officers did not have a reasonable, articulable suspicion that he was engaged in criminal activity. Following a hearing, the trial court granted Mann's motion to suppress upon its conclusion that "[b]ased upon the information [the arresting officer had] received and the lack of illegal or suspicious conduct he [had] observed, the officer lacked probable [cause] to seize and detain Mr. Mann." The state now appeals.
In its sole assignment of error, the state argues that the trial court erred in granting Mann's motion to suppress the evidence seized from the glove compartment during the officers' investigative stop of Mann, because the officers had stopped Mann upon a reasonable suspicion that he was engaged in criminal activity. We agree.
When we review a trial court's suppression ruling, we defer to the trial court's findings of historical fact, but assess the application of the law to those facts de novo.[1] Here, neither party disputes that the trial court mistakenly based its suppression ruling upon its conclusion that the police officers lacked probable cause to seize and detain Mann. We agree. The central issue is not whether the officers had probable cause to arrest Mann, but whether they had a reasonable suspicion that Mann was engaged in criminal activity.
An officer's decision to conduct an investigatory detention of an individual need only be supported by a reasonable, articulable suspicion of criminal activity, which, when viewed in light of the totality of the circumstances, justifies the detention.[2] Ohio courts have held that information received from an informant may provide reasonable suspicion for an investigatory stop where it is supported by sufficient indicia of reliability or corroborated by independent police work.[3]
In this case, there were a number of facts that provided the officers with a reasonable suspicion to justify the detention. The informant providing the tip was known by police and had given reliable information in the past.[4] When the officers arrived at the scene, the informant's information was verified when they observed the car he had described and saw someone talking to others near the glove compartment of the car. The area in which this took place was a high-crime area.[5] The officer who received the tip and who was one of those who responded to the scene was an experienced police officer. The officers who went to the scene and set up the surveillance had knowledge of drug trafficking, and they saw what they believed were actions consistent with the sale of drugs. Under the totality of these circumstances, we hold that the officers had a reasonable suspicion to stop Mann for investigative purposes.[6]
Mann, nonetheless, contends that even if the stop had been made upon a reasonable suspicion of criminal activity, we must still affirm the trial court's decision because he did not voluntarily consent to the search of the glove compartment. Mann contends that because the officers resorted to a "show of authority" when they read him his Miranda rights, he could not have believed that he was free to refuse to consent to the search. We disagree.
A search is valid and does not violate the Fourth Amendment when consent is freely and voluntarily given.[7] Here, police searched the glove compartment after a proper investigative stop. The officers did not claim any lawful authority to search the vehicle, nor did they make any promises or threats to obtain Mann's consent. When Mann was asked if he would consent to the search, he said yes.[8] The fact that police officers read him his Miranda rights did not alone invalidate his consent to a search. Moreover, the trial court found that Mann had consented to the search. As a result, we conclude that Mann's consent was voluntary and was, therefore, valid.
We, therefore, sustain the state's sole assignment of error, reverse the trial court's judgment granting Mann's motion to suppress, and remand this case for further proceedings consistent with this judgment entry and the law.
Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
Winkler, P.J., Gorman and Sundermann, JJ.
[1] State v. Frank (Feb. 18, 2000), 1st Dist. Nos. C-990079, C-990080, C-990081.
[2] State v. Bobo (1988), 37 Ohio St.3d 177,178,524 N.E.2d 489.
[3] See State v. Shepherd (1997), 122 Ohio App.3d 358, 365,701 N.E.2d 778.
[4] See, e.g., Adams v. Williams (1972), 407 U.S. 143,146-147, 92 S.Ct. 1921; State v. White (1996),110 Ohio App.3d 347, 353, 674 N.E.2d 405.
[5] State v. Bobo, supra, at 179.
[6] State v. Horton (May 25, 2001), 1st Dist. No. C-000434.
[7] State v. Comen (1990), 50 Ohio St.3d 206, 211,553 N.E.2d 640.
[8] State v. Lattimore, 10th Dist. No. 03AP-467, 2003-Ohio-6829.