JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant William Ruffin appeals his convictions for drug possession and drug trafficking, both with major drug offender specifications, and possession of criminal tools. For the reasons set forth below, we affirm.
 {¶ 2} On May 23, 2007, defendant was indicted pursuant to a three-count indictment. In Count One, defendant was charged with possession of one hundred grams or more of crack cocaine, with a major drug offender specification. In Count Two, defendant was charged with trafficking in one hundred grams or more of crack cocaine, with a major drug dealer specification, and in Count Three, defendant was charged with possession of criminal tools. Defendant pled not guilty and moved to suppress the evidence against him and to obtain the identity of the informant who contacted the police prior to his arrest.
 {¶ 3} On January 11, 2008, the trial court held an evidentiary hearing on the motion to suppress. The trial court subsequently denied the motion and also denied the motion for disclosure of the informant's identity.[1] Defendant then pled no contest to the indictment. He was convicted of all charges and was sentenced to ten years of imprisonment for Counts One and Two and one year for Count Three, with all terms to run concurrently. Defendant now appeals and assigns a single error for our *Page 4 
review.
 {¶ 4} Defendant's assignment of error states:
 {¶ 5} "The trial court erred in overruling defendant-appellant's motion to suppress evidence of a warrantless search and seizure that violated the Fourth and Fourteenth Amendments to the United States Constitution, and Article I, Section 14 of the Constitution of the State of Ohio."
 {¶ 6} Within this assignment of error, defendant asserts that the arresting officer lacked a proper basis for stopping and searching the vehicle in which defendant was riding.
 {¶ 7} "Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." State v. Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372,797 N.E.2d 71. (Internal citations omitted.) However, with respect to the trial court's conclusion of law, we apply a de novo standard of review and decide whether the facts satisfy the applicable legal standard. Id., citing State v. McNamara (1997), 124 Ohio App.3d 706, 707 N.E.2d 539.
 {¶ 8} The Fourth Amendment of the Constitution of the United States and Article I, Section 14, Ohio Constitution, protects against unreasonable searches and seizures. Evidence obtained in violation of the Fourth Amendment is barred by the *Page 5 
exclusionary rule. Mapp v. Ohio (1961), 367 U.S. 643, 6 L.Ed.2d 1081,81 S.Ct. 1684.
 {¶ 9} A warrantless search or seizure is per se unreasonable unless it falls within one of the recognized exceptions to the warrant requirement. Payton v. New York (1980), 445 U.S. 573, 586-587,63 L.Ed.2d 639, 100 S.Ct. 1371, citing Coolidge v. New Hampshire (1971),403 U.S. 443, 29 L.Ed.2d 564, 91 S.Ct. 2022. One of the recognized exceptions to the search warrant requirement is an investigative stop, or "Terry stop." See Terry v. Ohio (1968), 392 U.S. 1, 20,88 S.Ct. 1868, 20 L.Ed. 2d 889. Under Terry, a law enforcement officer may briefly stop and detain an individual for investigative purposes, even without probable cause to act, if he has a reasonable suspicion that "criminal activity may be afoot." Id. at 30. To justify his suspicion as reasonable, the officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." Id.
 {¶ 10} Terry has also been extended to justify the stop of an automobile and detaining the driver in order to check his driver's license and the registration of the automobile if the officer possesses the requisite reasonable suspicion based on articulable and reasonable suspicion that a motorist is subject to seizure for violation of law.Delaware v. Prouse (1979), 440 U.S. 648, 653, 99 S.Ct. 1391,59 L.Ed.2d 660; State v. Heinrichs (1988), 46 Ohio App.3d 63, 545 N.E.2d 1304.
 {¶ 11} It is also well established that information outside an officer's own observations, including tips, may supply the reasonable suspicion necessary to *Page 6 
justify initiating such a stop. State v. English (1993),85 Ohio App.3d 471, 474, 620 N.E.2d 125. Information received from a known informant may provide officers with the reasonable suspicion necessary to conduct an investigatory stop where it is shown to be reliable and credible.Adams v. Williams (1972), 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612. In Adams, the Court determined that an informant's tip provided the arresting officer with the requisite reasonable suspicion where the officer personally knew the informant, had previously obtained information from him, and provided him with information that was immediately verifiable at the scene. Accord State v. White (1996),110 Ohio App.3d 347, 352-353, 674 N.E.2d 405; State v. Hackett,171 Ohio App.3d 235, 870 N.E.2d 235, 2007-Ohio-1868.
 {¶ 12} In Hackett, supra, the court held that an informant's tip provided officers with reasonable suspicion to stop the defendant's vehicle. The court explained:
 {¶ 13} "The detective, a member of the Toledo police vice-narcotics unit, had previously worked with the same confidential informant; at a prior date, the informant's information led to a conviction in an unrelated drug-offense case. The confidential informant contacted the detective with a tip that appellant `deals drugs.' The informant also provided specific information as to the time, place, and manner of appellant's appearance." Id.
 {¶ 14} Moreover, an officer may rely on police dispatches to establish probable cause. State v. Amilcar, Franklin App. No. 08AP-357,2008-Ohio-6918, citing United States v. Henley (1985), 469 U.S. 221,231, 105 S.Ct. 675, 83 L.Ed.2d 604; State v. Brandon, Allen App. No. 8-08-11, 2008-Ohio-5821. *Page 7 
 {¶ 15} Finally, in State v. Evans (1993), 67 Ohio St.3d 405, 413,618 N.E.2d 162, the court held that "the right to frisk is virtually automatic when individuals are suspected of committing a crime, like drug trafficking, for which they are likely to be armed." InMinnesota v. Dickerson (1993), 508 U.S. 366, 113 S.Ct. 2130,124 L.Ed. 2d 334, the United States Supreme Court held that police, conducting a lawful Terry-type search, may seize nonthreatening contraband when its incriminating nature is "immediately apparent" to the searching officer through his sense of touch. Id. at 376. The Court said:
 {¶ 16} "If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context." Id.
 {¶ 17} In this matter, Cleveland Police Det. James Cudo of the narcotics unit testified that, on May 7, 2007, he received a telephone call from a confidential reliable informant (hereafter "CRI"). Det. Cudo explained that he had been in contact with the informant for over one month and had previously supplied the officer with substantial information that the officer was able to verify and that ultimately led to several convictions. The CRI informed Cudo that a large scale drug deal was occurring on East 112th Street, that dealers were "reupping" their drug supply, and that they were driving a white El Dorado Cadillac. Officer Cudo further testified that *Page 8 
he received the license plate number of the vehicle from the CRI who further indicated that two males had just exited the car and that a female remained in the driver's seat.
 {¶ 18} Det. Cudo went to the scene in an unmarked car and observed the vehicle with a female inside. The CRI then called him and stated that he could see the officer, and warned that the officer's presence on the scene may cause the suspects to alter their plans. Cudo then drove to a different location.
 {¶ 19} The CRI subsequently called Cudo a second time and reported that the men had gotten back into the vehicle and were proceeding northbound on East 112 toward Primrose. Cudo then followed the car and advised his dispatcher of the information and requested another unit to make a traffic stop of the car. Officer Louis Vertosnik stopped the car and began to arrest the occupants. At this point, Det. Cudo returned to the scene.
 {¶ 20} Officer Vertosnik testified that he received a call from Det. Cudo in which the detective stated that he may need him to make an investigative stop of a vehicle. Vertosnik observed the occupants of the rear seat moving about and reaching as if trying to conceal something. As Vertosnik approached the car on the driver's side, he observed marijuana on the floor of the car. Other officers arrived on the scene and began to remove the occupants from the car. Vertosnik observed that defendant, one of two rear seat passengers, had a big lump in his pocket. The officer asked defendant if he had anything that could get him into trouble and defendant reportedly stated that he did. Vertosnik and Officer Perez further testified *Page 9 
that he could see into defendant's pocket and observed a plastic bag with a white substance and believed that defendant was in possession of crack cocaine. Another occupant of the car was also in possession of crack cocaine.
 {¶ 21} From the foregoing, we conclude that the information which the CRI provided to Det. Cudo was sufficient under Terry to justify an investigative stop of the vehicle, as the CRI provided specific and articulable facts which, taken together with rational inferences from those facts, reasonably warranted the intrusion. In particular, it was established that Det. Cudo knew the CRI, the CRI had previously provided reliable and credible information in the past, and gave the detective information that was immediately verifiable at the scene. Moreover, Officer Vertosnik could rely on Det. Cudo's dispatch in making the actual stop of the car, and having done so, observed marijuana in plain view. The arrest of the driver further authorized a search of the car,Michigan v. Long (1983), 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201, and the pat down of the occupants. State v. Evans, supra. As defendant was patted down, the officers could properly seize the large bag of drugs, the incriminating nature of which was "immediately apparent" to the searching officer.
 {¶ 22} For all of the foregoing reasons, we conclude that the trial court properly denied the motion to suppress and the assignment of error is therefore without merit.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, P.J., and CHRISTINE T. MCMONAGLE, J., CONCUR.
[1] If the informant's involvement was limited to providing information relevant to probable cause to search, disclosure of the informant's identity is not required. State v. Parsons (1989),64 Ohio App.3d 63, 580 N.E.2d 800, citing United States v. Raddatz (1980),447 U.S. 667, 679, 100 S.Ct. 2406, 2414, 65 L.Ed.2d 424, 435. *Page 1