The STATE of Ohio, Appellee,

v.

HUNTER, Appellant.

[Cite as *State v. Hunter* (1994), 98 Ohio App.3d 632.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 66843.

Decided Nov. 14, 1994.

*Stephanie Tubbs Jones,* Cuyahoga County Prosecuting Attorney, and *Ronald D. James,* Assistant Prosecuting Attorney, for appellee.

*Patricia J. Smith,* Assistant Public Defender, for appellant.

---

*Per Curiam.*

This case came to be heard upon the accelerated calendar pursuant to App.R. 11.1 and Loc.R. 25 of the Eighth District Court of Appeals, the record from the trial court and the parties' briefs. Charles Hunter, defendant-appellant, was indicted for violation of one count of drug trafficking under R.C. 2925.03. On

November 23, 1993, a hearing was held on appellant's motion to suppress. After the motion was denied, appellant pled no contest. The court amended the indictment and found appellant guilty of the lesser included offense of possession of narcotics under R.C. 2925.11. Appellant appeals the trial court's denial of his motion to suppress. This court, finding no error, affirms the decision of the trial court.

Charles Hunter's sole assignment of error states:

"The trial court erred by denying Mr. Hunter's motion to suppress evidence which was seized without a warrant and without exception to the warrant requirement in violation of Article I, Section 14 of the Ohio Constitution and the Fourth and Fourteenth Amendments to the United States Constitution."

Appellant argues that based upon the evidence presented, the warrantless investigatory stop made by the police officers was not based upon any specific and articulable facts which would create a reasonable suspicion that appellant was involved in some form of criminal activity. Therefore, there was no legal justification for the officer's investigatory stop. Furthermore, appellant argues that since the officer did not believe the appellant was carrying any weapons, the search and subsequent removal of the plastic bag within appellant's coat was an illegal seizure.

At the hearing on appellant's motion to suppress, the arresting officer testified that on October 2, 1992, he and his partner were on a routine patrol of the Cleveland Police Department's Third District. At approximately 1:30 a.m., the officers saw appellant and another man talking in an area known for high drug activity. The arresting officer testified he had personally made approximately fifty drug arrests in that same area in the past two years. Acting upon this "hunch," the officers pulled their patrol car over and began getting out of the car. After seeing the officers approaching, the other man placed a small "wadded up" plastic bag in the inside of appellant's coat. The officer admits he did not actually see drugs inside the plastic but testified he suspected drugs were inside based upon his past experience. The two men had begun walking away when the officers stopped them.

The arresting officer further testified that after they stopped appellant and the other man, they patted them down for their own safety. The arresting officer did not feel a weapon but did retrieve the small wad of plastic from the appellant's coat in the same area he saw the other man place it. Upon examination, the officers discovered that it did in fact contain crack cocaine. It was at this time that appellant told the officers the other man had placed it inside his coat.

In a suppression hearing, the state bears the burden of proof and must demonstrate that the warrantless search and seizure were reasonable. *State v.*

*Bevan* (1992), 80 Ohio App.3d 126, 608 N.E.2d 1099. We note that although the results of the officer's search and seizure prove the officer's hunch to have been correct, we must, after considering the totality of the circumstances, focus independently upon the reasonableness of the officers' investigatory stop and subsequent search of appellant. See *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; *State v. Freeman* (1980), 64 Ohio St.2d 291, 18 O.O.3d 472, 414 N.E.2d 1044.

■ In justifying a particular intrusion a police officer must be able to point to specific and articulable facts which, taken together with reasonable inferences from those facts, reasonably warrant the officer's belief that criminal activity has occurred or is imminent. *Terry, supra; State v. Ball* (1991), 72 Ohio App.3d 43, 593 N.E.2d 431.

"The reputation of the area for criminal activity is an articulable fact upon which a police officer may legitimately rely" in determining whether an investigatory stop is warranted. *State v. Bobo* (1988), 37 Ohio St.3d 177, 179, 524 N.E.2d 489, 491, citing *United States v. Magda* (C.A.2, 1976), 547 F.2d 756, 758. Additionally, the time of night may also be a factor considered when determining the reasonableness of police conduct. *Bobo, supra.*

■ We recognize that a hunch standing alone is insufficient to justify a search under *Terry* and its progeny. See *State v. Rucker* (1990), 63 Ohio App.3d 762, 580 N.E.2d 59. However, the officer's initial hunch, which was based on the high-crime area in which the two men were standing and the time of night the incident took place, was further substantiated by the two men's actions after they saw the officers pull over their patrol car and before the officers actually stopped the two men.

Again, the arresting officer testified that after the two men saw the officers, the one man put a small wadded up plastic bag in the appellant's coat and both began walking away. At this point, there was no stop as delineated by *Terry.* See *Florida v. Royer* (1983), 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229. It was only after these events that the officers detained appellant and the other man.

Based upon these observations and keeping in mind that we are to give due weight to the officers' experience and training in view of the evidence as it would be understood by those in law enforcement, *United States v. Cortez* (1981), 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621, we find that the officers did have a reasonable suspicion to conduct an investigatory stop of the appellant.

■ Next we examine the search of appellant and subsequent seizure of the crack cocaine. The arresting officer testified that after he and his partner stopped the appellant and the other man, a patdown search was conducted for their safety. The purpose for such a search is not evidentiary in nature, but

rather for the protection of officers and others nearby. *Adams v. Williams* (1972), 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612. However, the United States Supreme Court has held that police may seize nonthreatening contraband detected through the sense of touch during a protective patdown search if its incriminating nature is immediately apparent to the searching officer. *Minnesota v. Dickerson* (1993), 508 U.S. ——, 113 S.Ct. 2130, 124 L.Ed.2d 334. See, also, *State v. Cloud* (1993), 91 Ohio App.3d 366, 632 N.E.2d 932.

In the case *sub judice*, we find that under the totality of the circumstances, the officers were justified in conducting a patdown search "to determine whether the person is in fact carrying a weapon." *Terry, supra,* 392 U.S. at 24, 88 S.Ct. at 1881, 20 L.Ed.2d at 908. Also, under the totality of the circumstances, we find that it was immediately apparent to the officer (1) that the small package he felt inside appellant's coat was the wadded up plastic bag the officers had witnessed the other man place inside appellant's coat, and (2) that the incriminating nature of the wadded up plastic bag was immediately apparent to the officer. Therefore, the trial court did not commit prejudicial error in denying appellant's motion to suppress.

*Judgment affirmed.*

MATIA and NUGENT, JJ., concur.

BLACKMON, P.J., dissents.

BLACKMON, Presiding Judge, dissenting.

Because I believe the conduct of the police officers in this case offends the fundamental values of the Fourth Amendment, I respectfully dissent. The initial stop of Hunter was unreasonable and the attendant protective search of Hunter for weapons was a pretextual search for drugs.

The Fourth Amendment is the genius of an innocent time. It guards us from unreasonable stops (seizures) and searches and protects our right to privacy. The United States Supreme Court has held that it allows for a limited intrusion for investigation based on reasonable suspicion and protective searches for weapons of suspects when the police officer reasonably fears for his own safety. *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, and *Sibron v. New York* (1968), 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917. It is this limited-intrusion exception of *Terry* that is at issue in this case.

The majority opinion holds that the police may stop (seize) and search any person they see standing on the street at 1:30 a.m. in a high-drug activity area. Illustrating this holding, the police officer said that "they were just both in that area at that time." The majority's holding in substance means that time and

place considerations alone are sufficient standards to justify a stop. With this I cannot agree.

Perniciously, the majority opinion swallows up the general rule of the Fourth Amendment, a potentiality warned of by Justice Brennan in his concurrence in *Florida v. Royer* (1983), 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229. He cautioned us against broadly developing precepts and using the limited exception of *Terry* to justify them. He urged the limited use of *Terry,* a sensible notion designed to ensure against vague and baseless suspicion as justification for a stop.

Besides the detriment the majority's holding causes to the Fourth Amendment, it is as well antithetical to the Fourth Amendment and to *Terry.* *Terry* requires an initial stop to be based on facts that adequately and reasonably show its basis. Here, the initial stop lacked these prerequisites.

Historically, the United States Supreme Court has rejected time and place considerations as reasonable indicators of criminal activity. Consistent with the notions of liberty and freedom the United States Supreme Court has held that a person may be stopped only if the officer has a reasonable suspicion based on objective facts that the person is involved in criminal activity. *Brown v. Texas* (1979), 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357. This rule demonstrates the United States Supreme Court's refusal to use time and place considerations as the sole grounds for a *Terry*-type stop. In substance, the United States Supreme Court said time and place considerations do not meet the standard of "reasonable suspicion based on objective facts."

Contrarily, the majority believes the stop (seizure) occurred after the men were ordered against the zone car. The majority concludes that the stop (seizure) occurred after the police observed Richardson place the plastic into Hunter's pocket. It was the officer's observations of the plastic, the majority urges, that justified the stop and subsequent search.

I, on the other hand, believe Hunter was seized when the officers pulled their vehicle up to the two men. After all, the officer said the reason they pulled closer was because they suspected a drug transaction. Consequently, it is that moment that is crucial to the determination of the facts available to the officer at the time that caused him to reasonably believe a drug transaction was afoot. Based on the officer's testimony, he had none. He stated that "they were just both in that area at that time." Under *Brown v. Texas,* this is insufficient to justify a stop.

Now, I am not unmindful of our state Supreme Court's seemingly bottomless pit of acceptance of time and place considerations as sufficient grounds to stop. Yet, in Hunter's case, some concern has to be voiced for the arbitrary stopping of him on the public street when he was not engaged in observable criminal activity.

After all, no drug house was nearby. No furtive movements were detected. No alley shielded their bodies from detection. No heads were bowed, poring over money in exchange for drugs. No evasive, nervous behavior was detected. No chase ensued. No money changed hands.

On recross, the officer admitted that his actions were all "hunches" not based on articulable, reasonable suspicion. When questioned on redirect by the prosecution, the officer said it was not his practice to assume a drug transaction by every person he sees standing. Yet, this is exactly what he did. He assumed a drug transaction by the two men because they were standing in that area at that time. Assumptions of this nature are dangerous because they do not allow for any other probable consequences. For example, did Richardson detect the police, and in an attempt to avoid consequence to himself, place the drugs in Hunter's pocket? This inference is reasonable in light of the officer's testimony that he found no money on either of the men and that Hunter was not doing anything with his hands. This brings me to what I think this case is really about, the search for drugs.

In a case involving a self-protective search for weapons, the officer must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous. Here, as is too often the case, the officer took the witness stand and said, "We searched for weapons for our safety." He was not asked whether, nor was he required to articulate why, he believed that his safety was in jeopardy.

The majority, of course, is content to infer that in high-drug activity areas everyone is armed and dangerous. This may very well be true. However, I suggest the police officer explain this fact and provide information under oath to substantiate his belief that his life was in danger. Police officers still remain subject to scrutiny for credibility, regardless of our perception that the streets are dangerous.

The reality is that the officer was looking for drugs and he found them. He admitted that no object or weapon was detected during the patdown that might have been used to assault him. It was the officer's search for drugs that caused him to put his hand in Hunter's pocket. In *Terry*, it was only after the officer detected the object that he had put his hand in *Terry's* pocket. See *Sibron v. New York*, 392 U.S. at 65–66, 88 S.Ct. at 1904, 20 L.Ed.2d at 936.

Finally, I disagree with the majority's attempt to characterize this case as a plain-feel case under *Minnesota v. Dickerson* (1993), 508 U.S. ——, 113 S.Ct. 2130, 124 L.Ed.2d 334. The plain-feel exception still requires a reasonable reason for the stop and a reasonable belief of danger before a search for weapons can occur. Neither standard has been shown in this case.