DECISION AND JUDGMENT ENTRY
This is an appeal by the state of Ohio, brought pursuant to Crim.R 12(J) and R.C. 2945.67, from a judgment entered by the Lucas County Court of Common Pleas, which orders the suppression of evidence that was to be used against appellee, Galen Hood. The following error is raised for our consideration:
 "THE LOWER COURT ERRED WHEN IT FOUND THE APPELLEE'S MOTION TO SUPPRESS TO BE WELL-TAKEN AS TO THE FRISK (SEARCH) OF THE APPELLEE, WHERE THE TRIAL COURT HAD PROPERLY IDENTIFIED THE LAW TO BE APPLIED, BUT HAS INCORRECTLY APPLIED THE LAW TO THE FACTS."
In December 1999, the Lucas County Grand Jury indicted appellee on one count of possessing a controlled substance, crack cocaine, in an amount exceeding one gram, but not exceeding five grams, in violation of R.C. 2925.11(A) and (C)(4)(b). Appellee filed a motion to suppress any evidence obtained by the state by means of an allegedly unlawful search and seizure of appellee's person. Appellee asserted that on October 12, 1999, he was arrested for a violation of R.C. 2915.04(A) and (D), public gaming, a minor misdemeanor, and that the search conducted was made incident to this arrest. R.C. 2935.26 allows the arrest of a person charged with the commission of a minor misdemeanor only under express, limited exceptions. Because none of these exceptions applied to appellee's situation, appellee argued that his arrest was unlawful. Therefore, he concluded the search conducted by the arresting officer was in violation of the Fourth Amendment's prohibition against unreasonable searches and seizures, and, consequently, the evidence (crack cocaine) seized in that search must be suppressed.
At the hearing on appellee's motion, the state contended that the search of appellee was a limited search for weapons during an investigatory detention and was therefore reasonable under the law set forth in Ohio v. Terry (1968), 392 U.S. 1, 22-24
and State v. Bobo (1988), 37 Ohio St.3d 177, paragraph two of the syllabus. The following facts were adduced at that hearing through the testimony of the sole witness, Officer William J. Goodlet of the Toledo Police Department.
On October 12, 1999 at three o'clock in the afternoon, Officer Goodlet and his partner were dispatched to 911 Walnut Street in the city of Toledo on an anonymous complaint of men gambling at the rear of an apartment building. According to Goodlet, who, at that point in time, had five years of experience in patrolling this part of the city, the area in and around 911 Walnut is a high crime area, known for "drugs, prostitution, and loitering."
Officer Goodlet and his partner parked their vehicle in front of 911 Walnut. When the police officers walked to the back of the building, they observed three men rolling dice. One man was at the bottom of a set of stairs leading to the rear door of the building, the second man was sitting on the stairs and appellee was standing at the top of the stairs rolling the dice. The man at the bottom of the stairs fled the scene, but the other suspect remained seated. When appellee saw the police officers, "he made a quick movement, sudden movement toward the door of the apartment [building], opened the door in [an] attempt to get inside the apartment hallway." The officers apprehended appellee just inside the doorway.
Officer Goodlet testified that due to the number of drug related calls from that area, and the number of occasions on which weapons were involved in those calls, he believed that the activity occurring at the rear of 911 Walnut "was something a little more serious than just a dice game." According to Goodlet, he therefore conducted a pat down search of appellee for his own safety. When Officer Goodlet touched appellee's sock, he felt a large lump that he believed was contraband, specifically, crack cocaine. The officer removed the "lump" and discovered what appeared to be crack cocaine.
On cross-examination, appellee's trial counsel questioned Officer Goodlet about the crime report he filed and the supplemental crime report filed by a Detective R. Permar. At the top of Officer Goodlet's report under "Crime," the words "DRUG ABUSE F-4" are written. However, the officer's report states that appellee was arrested for public gaming, subsequently searched and the crack cocaine discovered. The detective's supplemental report indicates that appellee was "placed in custody for Public Gaming" and searched incident to arrest. Officer Goodlet asserted that his crime report was "inaccurate" in that it should say appellee was "charged" with public gaming and placed under arrest for the possession of drugs. He could not recall the source of information for Detective Permar's supplemental report.
After questioning the officer and listening to the closing arguments of the parties, the trial judge determined that the testimony of Officer Goodlet concerning his crime report was credible. However, the court did not base its decision on whether the search of appellee was made incident to his arrest. Rather, the judge found that the search in the present case was a "stop and frisk." Thus, the court held that determination of whether the search conducted by Officer Goodlet violated the Fourth Amendment prohibition against unreasonable searches and seizures was governed by the principles set forth in Terry andBobo. Upon applying those principles, the trial judge determined that "under all the facts and circumstances here, I just don't find that the officer was justified in frisking this defendant or that he had reasonable grounds to believe that this defendant was armed and dangerous." Therefore, the court granted appellee's motion to suppress the evidence obtained as a result of the search and seizure of his person. This timely appeal followed.
At a suppression hearing, the state bears the burden of proving that a warrantless search and/or seizure meets Fourth Amendment standards of reasonableness. State v. Warren (1998),129 Ohio App.3d 598, 602 (citations omitted). See, generally, 5 LaFave, Search and Seizure (3 Ed. 1996), Section 11.2(b). An investigative stop requires evidence that the officer making the stop had a reasonable, articulable suspicion of criminal activity.Terry v. Ohio, 392 U.S. at 22. In the present case, it cannot be disputed that the investigative stop was supported by a reasonable, articulable suspicion of public gaming, a violation of the law. Hence, the only issue on the motion to suppress was whether the state proved, based on the totality of the circumstances, that Officer Goodlet had a reasonable, articulable suspicion appellee was armed thereby allowing the officer to initiate a protective search, that is, a "frisk."Terry v. Ohio, 392 U.S. at 27; State v. Bobo, 37 Ohio St.3d at paragraph two of the syllabus. See, also, State v. Evans (1993),67 Ohio St.3d 405, 408-409.
The standard in determining this issue is an objective one. The law enforcement officer need not be absolutely certain that the suspect is armed. Terry v. Ohio, 392 U.S. at 27. Instead, the totality of the circumstances must be viewed through the eyes of a reasonably prudent police officer at the scene, who, in the course of an investigation is sometimes required to react to life-threatening events as they unfold. Id.; State v. Freeman
(1980), 64 Ohio St.2d 291, 295. The rule permits a police officer to take reasonable precautions to ensure his or her safety during the course of an investigative stop. State v. Andrews (1991),57 Ohio St.3d 86, 89 (citations omitted).
In Bobo, the Ohio Supreme Court considered the following seven factors in determining whether either a "stop" or a "frisk," was reasonable under the totality of the circumstances: (1) whether the area in which the actions occurred is an area of heavy drug activity in which weapons are prevalent; (2) whether it was dark; (3) the officer's experience both in general as a police officer and in the drug and weapon context; (4) the officer's knowledge of how drug transactions take place in the area; (5) the officer's observation of any furtive actions by the individual; (6) the officer's experience in recovering drugs or weapons after viewing such furtive actions; and (7) whether or not the police officer was out of the patrol car and away from any protection if the individual was armed. Id. at 179-180.
Here, Officer Goodlet had seven years of experience as a police officer. He spent five of those years patrolling the area where appellee was apprehended and indicated that it was an area high in criminal activity that involved both drugs and prostitution. In his experience, numerous calls to that area involved not only these criminal activities, but also weapons. While the investigation was conducted during the daylight hours, both officers were some distance from their patrol car attempting to investigate a criminal activity involving three suspects and were away from any protection the patrol car might afford if either appellee or any of the other suspects was armed. Moreover, both appellee and a second man involved in the alleged public gaming attempted to flee the scene, an act that could raise a suspicion in a reasonably prudent officer's mind that the three men were engaged in criminal activity involving more than just a dice game and could be armed. Based on this review of the totality of the circumstances, we must disagree with the trial court and hold that the facts of this case support a reasonable, articulable suspicion on the part of Officer Goodlet that appellee was armed and therefore dangerous. As a result, Goodlet could permissibly engage in a limited search of appellee for weapons. We further note that, pursuant to Minnesota v. Dickerson
(1993), 508 U.S. 366, Officer Goodlet could lawfully seize the nonthreatening contraband (crack cocaine) because its incriminating nature was immediately apparent to the officer through his sense of touch. See, also, State v. Evans,67 Ohio St.3d at 414 n. 5.
For the foregoing reasons, we find that the trial court erred in granting appellee's motion to suppress the evidence obtained as a result of Officer Goodlet's protective search. Therefore, the state's sole assignment of error is found well-taken. The judgment of the Lucas County Court of Common Pleas is reversed, and this cause is remanded to that court for further proceedings consistent with this judgment. Appellee is ordered to pay the costs of this appeal.
Melvin L. Resnick, J., Mark L. Pietrykowski, J., CONCUR.
James R. Sherck, J., dissents.