OPINION.
Defendant-appellant Damian Hollins was indicted for possession of cocaine in violation of R.C. 2925.11(A). Hollins moved to suppress the cocaine, which had been seized from his luggage at a bus station. Hearings were conducted on March 1 and March 14, 2000.
The record reflects that, on November 3, 1999, Officer Briede, a Cincinnati police officer assigned to the Regional Narcotics Unit, was working at a bus terminal, as he often did, looking for potential drug activity. Briede observed Hollins get off a bus and start to walk towards the door used by most pedestrians, but Hollins hesitated when he saw Briede standing there in his uniform. Hollins then attempted to leave the bus station through an exit not typically used by passengers. Suspicious, Briede called out to Hollins and asked to speak with him. Hollins walked towards Briede and began answering questions about where he had come from and where he was going to stay while in town. According to Briede's testimony, Hollins stated that he was staying nearby and that he had "come from the South." Briede then asked Hollins for his bus ticket, but Hollins was unable to provide one. Briede also obtained Hollins's identification card. Shortly thereafter, Briede asked to search one of Hollins's bags in order to "either confirm or dispel the notion that [Hollins] was carrying narcotics." According to Briede, Hollins consented to the search.
Hollins testified at the suppression hearings. Hollins denied that he had been avoiding the police officer as he left the bus terminal, but he did admit to agreeing to talk with the police officer. Hollins testified that he had informed the officer that he was arriving from Georgia. Hollins stated that, while he had initially volunteered to speak with Briede, he did not feel free to leave when Briede retained possession of his identification and placed a hand on his shoulder before asking to search the luggage. Further, Hollins testified that he felt unable to freely leave because other officers were approaching him from both sides. As a result, Hollins stated, he had agreed to allow a dog to search his bags, but he claimed, the dog did not "alert" to his bags. Hollins testified that Briede then asked if he could search the luggage. Hollins testified that he did not respond to this request.
A second officer, who had apparently arrived at some point during Briede's conversation with Hollins, searched Hollins's bags. That officer discovered cocaine rolled up inside some pants in one bag. Hollins was placed under arrest. As Hollins was being arrested, a second package of cocaine was discovered in the other bag.
After the suppression hearings, the trial court denied Hollins's motion, concluding that the initial encounter between the arresting officer and Hollins was consensual, and that Hollins had voluntarily consented to a search of his bags. As a result, the court did not suppress the cocaine. Hollins entered a no-contest plea and was thereafter found guilty of possession of cocaine and sentenced as appears of record. Hollins now appeals the conviction, challenging the trial court's ruling on his motion to suppress.
Hollins advances two arguments. First, he maintains that the investigatory detention was unreasonable because the officer did not possess a reasonable suspicion that he was engaged in criminal activity to justify questioning him, that he was impermissibly seized as a result, and that his consent for the search was not voluntary. Second, Hollins argues that the evidence obtained as a result of the unlawful search and seizure constituted an impermissible fruit of the poisonous tree and should not have been held admissible. In response, the state maintains that the encounter between Hollins and Briede was consensual. The state further maintains that, even if the encounter rose to the level of an investigatory detention, the evidence supported the conclusion that it was reasonable under the circumstances.
In a hearing on a motion to suppress, the trial court assumes the role of the trier of fact, and determines the credibility of the witnesses and weighs the evidence presented at the hearing.[1] A reviewing court must accept the trial court's findings of fact if they are supported by competent, credible evidence;[2] but, the reviewing court must independently determine, as a matter of law, whether the facts meet the appropriate legal standards.[3]
The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution secure the right of individuals to be free from unreasonable searches and seizures. Section 14, Article 1 of the Ohio Constitution has been interpreted to provide protections that are coextensive with those provided by the Fourth Amendment to the United States Constitution.[4] A warrantless seizure is per se unreasonable unless it falls within one of the recognized exceptions to the warrant requirement,[5] such as a search conducted pursuant to voluntary consent.[6] Where there is otherwise a lawful detention, voluntariness is ordinarily a question to be determined from the totality of the circumstances demonstrated in the record.[7] Among the circumstances to be considered are the length of the detention, the repeated and prolonged nature of the questioning, and any use of physical force.[8] But, where a detention is unlawful, any consent given by the individual is presumed to be tainted, and the consent must be held invalid unless the "totality of the circumstances * * * clearly demonstrate[s] that a reasonable person would believe that he or she had the freedom to refuse to answer further questions and could in fact leave."[9]
It is undisputed here that the initial encounter between Briede and Hollins was consensual. Therefore, the question becomes whether, at some point prior to the time Hollins purportedly had consented to the search, the encounter had ripened into a Fourth Amendment seizure.
The Fourth Amendment is not implicated in every police-citizen encounter.[10] Where a police officer identifies himself, he may approach an individual in a public place and ask that individual to answer questions.[11] But when the encounter rises to the level of a "seizure," Fourth Amendment concerns arise.[12] A "seizure" in the context of the Fourth Amendment occurs when there is some application of physical force or a show of authority to which the individual yields.[13]
A person has been "seized" within the meaning of the Fourth Amendment only if, in light of the totality of the circumstances, an objective, reasonable person would have believed he was not free to leave.[14] So long as an officer does not require compliance, a seizure does not occur where that officer asks to examine an individual's identification and requests consent to search luggage.[15] Thus, an encounter does not trigger Fourth Amendment scrutiny unless it loses its consensual nature.[16]
Here, Briede, who was wearing his uniform, summoned Hollins into the bus terminal in order to ask him brief questions. Briede identified himself as a Cincinnati police officer. Briede asked Hollins questions relating to Hollins's recent whereabouts, and Hollins voluntarily answered the inquiries. During the questioning, Briede, who specialized in narcotics and drug trafficking, asked to search Hollins's bags. Hollins consented. Despite Hollins's contentions that he did not subjectively feel free to leave the bus station as several officers began to approach him, the question is whether a reasonable person would have felt free to leave. Under these circumstances, we cannot say that an objective person would not have felt free to leave, because the encounter took place in a public place, Briede did not yield a gun, and Briede specifically advised Hollins that he could refuse to consent.
Having properly determined that the police officer had not unlawfully detained Hollins, the trial court did not err in concluding, based on the totality of the circumstances, that Hollins had voluntarily consented to the search. The trial court, as the trier of fact, was entitled to credit Briede's testimony that Hollins had consented to the search of his bags. Further, our review of the record convinces us that there was an appropriate basis for the trial court's determination that the consent to search the bags had been voluntarily given. Therefore, we hold that the trial court did not err in overruling the motion to suppress.
The judgment of the trial court is, therefore, affirmed.
 ___________________________ Sundermann, Judge.
 Winkler, J., concurs,
[1] See State v. Mills (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972,982, citing State v. Fanning (1982), 1 Ohio St.3d 19, 20, 437 N.E.2d 583,584.
[2] See State v. Warren (1998), 129 Ohio App.3d 598, 601, 718 N.E.2d 936,938-939; State v. Curry (1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172,1174; State v. Claytor (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906,908.
[3] See State v. Warren, supra; State v. Curry, supra; State v.Claytor, supra.
[4] See State v. Robinette (1997), 80 Ohio St.3d 234, 245,685 N.E.2d 762, 771.
[5] See Katz v. United States (1967), 389 U.S. 347, 357,88 S.Ct. 507, 514.
[6] See Schneckloth v. Bustamonte (1973), 412 U.S. 218, 219,93 S.Ct. 2041, 2043-2044.
[7] See Ohio v. Robinette (1996), 519 U.S. 33, 39-40, 117 S.Ct. 417,421; Schneckloth v. Bustamonte, supra, at 226, 93 S.Ct. at 2047.
[8] See Schneckloth v. Bustamonte, supra.
[9] State v. Robinette, supra, paragraph three of the syllabus, citations omitted. See, also, State v. Dettling (1998),130 Ohio App.3d 812, 815-816, 721 N.E.2d 449, 451.
[10] See United States v. Mendenhall (1980), 446 U.S. 544, 553,100 S.Ct. 1870, 1877.
[11] See Florida v. Bostick (1991), 501 U.S. 429, 434, 111 S.Ct. 2382,2386; Florida v. Royer (1983), 460 U.S. 491, 497, 103 S.Ct. 1319, 1324
(plurality opinion); Terry v. Ohio (1968), 392 U.S. 1, 19, 88 S.Ct. 1868,1879, fn. 16; State v. Retherford (1994), 93 Ohio App.3d 586, 595,639 N.E.2d 498, 504.
[12] See Florida v. Bostick, supra.
[13] See California v. Hodari D. (1991), 499 U.S. 621, 626,111 S.Ct. 1547, 1550-1551; Terry v. Ohio, supra.
[14] See Michigan v. Chesternut (1988), 486 U.S. 567, 573,108 S.Ct. 1975, 1979; State v. Mendenhall, supra.
[15] See Florida v. Bostick, supra, at 437, 111 S.Ct. at 2388.
[16] See id. at 434, 111 S.Ct. at 2386.