DECISION
On November 5, 1999, the Hamilton County Grand Jury returned a two-count indictment charging defendant-appellant Orlando Grafinreed with carrying a concealed weapon and possession of cocaine. Prior to trial, the defendant filed a motion to suppress the evidence upon which the charges were based. Following a hearing, the trial court denied the motion. The defendant subsequently entered pleas of no contest to the charges. The trial court accepted the pleas, found the defendant guilty as charged, sentenced him as appears of record, and entered judgment accordingly.
From that judgment, the defendant has taken the instant appeal. On appeal, he advances a single assignment of error, in which he challenges the denial of his motion to suppress. We find no merit to this challenge.
At the hearing on the motion to suppress, Cincinnati Police Officer Donald Meese testified that, on the evening of October 27, 1999, at approximately 8:00 p.m., he and a fellow officer were in a marked cruiser, on an off-duty detail for the Cincinnati Metropolitan Housing Authority ("CMHA"), when they observed the defendant and a companion walking on the sidewalk in the direction of CMHA property. In furtherance of their responsibility, as Officer Meese understood it, "to keep persons who d[id] not live or have business on Metropolitan Housing Property * * * off of the property," the officers pulled alongside the defendant and his companion and asked if they lived in CMHA housing. When the defendant responded in the affirmative, Officer Meese asked him his name with the intention of checking it against a list of residents. The defendant replied, "Grafinreed." The name "Grafinreed" resonated with Officer Meese, who recalled from his perusal of the "wanted board" at his district's headquarters that an individual with the "[un]common name" of Grafinreed, first name Terrence, was wanted on a felony warrant in connection with drug trafficking.
With that thought in mind, Officer Meese stepped out of the cruiser and ordered the defendant to place his hands on the vehicle. The defendant acceded to the officer's demand, while offering that his first name was Orlando. The officer nevertheless frisked the defendant and recovered from his pocket a .22-caliber handgun. The officers thereupon handcuffed the defendant and his companion and took them into custody. Later, en route to a detention facility after he had been processed, the defendant disclosed to Officer Meese that he had a quantity of crack cocaine concealed in his underwear.
On cross-examination, the defense presented documentary evidence demonstrating that, on May 6, 1999, one Terrence Grafinreed had been adjudged an absconder from the jurisdiction and the community-control sanction which had been imposed upon his September 1998 conviction for felony cocaine possession, and that, on October 18, 1999, nine days prior to the October 27 encounter between the defendant and Officer Meese, Terrence Grafinreed had been charged with violating this community-control sanction.
The defendant sought, by his motion to suppress, the exclusion of the handgun and the crack cocaine, on the ground that the stop-and-frisk that led to their discovery was conducted in violation of the rights secured to him by the Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution. The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution secure the right to be free from unreasonable searches and seizures and require warrants to be particular and supported by probable cause.[1] A warrantless search or seizure is unreasonable per se, unless it falls within one of the recognized exceptions to the warrant requirement. See Payton v. New York (1980), 445 U.S. 573, 586-587,100 S.Ct. 1371, 1380 (citing Coolidge v. New Hampshire [1971], 403 U.S. 443,474-475, 91 S.Ct. 2022, 2042). Evidence derived from a search or seizure effected in contravention of the Fourth Amendment is subject to exclusion at trial. See Mapp v. Ohio (1961), 367 U.S. 643, 81 S.Ct. 1684.
Under the investigative-stop exception to the warrant requirement, a police officer may, consistent with the state and federal constitutions, stop and briefly detain a person without a warrant, if the officer has a reasonable suspicion, based upon specific and articulable facts, that the suspect is wanted for past criminal conduct or is currently engaged in, or will in the future be engaged in, criminal conduct. See United Statesv. Cortez (1981), 449 U.S. 411, 417, 101 S.Ct. 690, 695, fn. 2; Terry v.Ohio (1968), 392 U.S. 1, 21, 88 S.Ct. 1868, 1880; accord State v.Andrews (1991), 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271, 1273, certiorari denied (1991), 501 U.S. 1220, 111 S.Ct. 2833.
The United States Supreme Court, in Alabama v. White (1990),496 U.S. 325, 110 S.Ct. 2412, noted that "[r]easonable suspicion is a less demanding standard than probable cause," but "like probable cause, [it] is dependent upon both the content of information possessed by police and its degree of reliability." The information's "quantity and quality" must thus be considered under the "`totality of the circumstances' * * * that must be taken into account when evaluating whether there is reasonable suspicion." See id. at 330,110 S.Ct. at 2416; accord State v. Freeman (1980), 64 Ohio St.2d 291, 414 N.E.2d 1044, paragraph one of the syllabus. Moreover, "these circumstances are to be viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold"; thus, "[a] court reviewing [an] officer's actions must give due weight to his experience and training and view the evidence as it would be understood by those in law enforcement." Andrews, supra at 87-88, 565 N.E.2d at 1273 (citingCortez, supra at 418, 101 S.Ct. at 695).
Appellate review of a determination of reasonable suspicion to effect an investigative stop entails a two-step inquiry: First, into the trial court's findings of the "historical facts," reviewing the findings for "clear error" and "giv[ing] due weight to inferences drawn from those facts by resident judges and local law enforcement officers"; and, second, into "whether [the] historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion * * *." Ornelas v. United States (1996), 517 U.S. 690,695-700, 116 S.Ct. 1657, 1661-1663.
In the proceedings below, the trial court made no factual findings. But the historical facts material to our analysis here are undisputed.
A "seizure" for purposes of the protections afforded by theFourth Amendment occurs "[o]nly when [a police] officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen * * *." Terry, supra at 19, 88 S.Ct. at 1879, fn. 16. Here, the initial encounter between the defendant and the police officers did not constitute a "seizure" as contemplated by the Fourth Amendment, because neither the nature of, nor the circumstances surrounding, the officers' questions concerning the defendant's residency and identity would have caused a reasonable person to believe that he was not free to leave. SeeUnited States v. Mendenhall (1980), 446 U.S. 544, 554, 100 S.Ct. 1870,1877; State v. Williams (1990), 51 Ohio St.3d 58, 61, 554 N.E.2d 108,111, certiorari denied (1990), 498 U.S. 961, 11 S.Ct. 394; see, also,State v. Black (Dec. 31, 1998), Hamilton App. No. C-970874, unreported;State v. Hummons (Sept. 18, 1996), Hamilton App. No. C-950747, unreported (holding that a seizure was not effected when a police officer approached defendant on Cincinnati Metropolitan Housing Authority property and asked him to identify himself).
The defendant was seized, however, and the Fourth Amendment was implicated, at the moment that the defendant complied with Officer Meese's command that he approach the cruiser and position himself for a pat-down search by placing his hands on the vehicle. See California v.Hodari D. (1991), 499 U.S. 621, 111 S.Ct. 1547 (holding that a "seizure" occurs only upon an application of physical force or a show of authority to which the subject yields). The officer testified at the hearing that he had detained the defendant so that he might further investigate his suspicion, based upon his recollection of the "wanted board" at his district's headquarters, that the defendant was the individual named in a felony drug-trafficking warrant. The record suggests that an arrest warrant was issued in May 1999, albeit in the name of Terrence, rather than Orlando, Grafinreed, and that the warrant remained outstanding until approximately one week before the officers' encounter with the defendant.
The United States Supreme Court in United States v. Hensley (1985),469 U.S. 221, 229, 105 S.Ct. 675, 680, held that a police officer may conduct an investigative stop if he possesses "a reasonable suspicion, grounded in specific and articulable facts, that a person [he] encounter[s] was involved in or is wanted in connection with a completed felony." We hold that no Fourth Amendment violation attended the defendant's detention, because Officer Meese offered in his testimony specific and articulable facts demonstrating a reasonable suspicion that the defendant was the individual named in the posting on his district's "wanted board," and because the record supports a determination that the arrest warrant upon which the posting was predicated had been issued based upon an independent judicial determination of probable cause that its subject had absconded from the community-control sanction imposed for a felony drug offense. See id. at 230-231, 105 S.Ct. at 681.
Finally, a police officer may, in the course of an investigative stop, conduct a protective search for a concealed weapon, when, under the totality of the surrounding circumstances, "[the] officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others," provided that the search is "limited in scope to this protective purpose." Terry, supra at 146, 88 S.Ct. at 1881; see, also, State v. Bobo (1988), 37 Ohio St.3d 177, 524 N.E.2d 489, paragraphs one and two of the syllabus.
The pat-down search of the defendant that revealed his possession of the handgun, and that led, ultimately, to his confession to his possession of cocaine, was conducted after dark, in a "high-crime" neighborhood, in the course of an investigation into whether the defendant was wanted on a felony warrant. Officer Meese, on cross-examination, confirmed that he personally had witnessed no conduct on the part of the defendant that had caused him to believe that the defendant was armed. The officer stated that he had frisked the defendant because he "was conducting an investigation[,] thinking that [the defendant] was the Grafinreed that had the felony warrant," and he "was concerned for his safety," when his experience had shown that such encounters were "dangerous" because "[a] lot of people that have felony warrants feel that they have nothing to lose."
These circumstances are distinguishable from those circumstances inState v. Warren, (1998), 129 Ohio App.3d 598, 718 N.E.2d 936, that prompted this court to hold that the trial court should have suppressed the crack cocaine found in Warren's underwear in the course of a protective search during his detention upon his suspected possession of a small quantity of crack cocaine. There, the officer who had detained Warren testified that, regardless of the nature of the suspicion underlying the detention, he "always," for his safety, patted down detainees during investigative stops, "especially" during detentions in the "high-crime neighborhood" in which he had detained Warren. In holding that the fruits of the protective search were subject to exclusion, we noted that "[t]he only factor that [the officer] pointed to for frisking Warren was that he was in * * * a high-crime neighborhood," and we declared that, "[alt]hough the area is certainly a factor to be considered," the mere presence of a detainee in a specific area could "never[,] standing[ing] alone[,] * * * validate a protective search."Id. at 604, 718 N.E.2d at 940. We thus concluded that the officer had failed to articulate a reasonable suspicion that Warren was armed.
Here, Officer Meese identified factors underlying his decision to frisk the defendant beyond the defendant's mere presence in a high-crime area, including the officer's reasonable suspicion that the defendant was wanted on a felony warrant and his experience with individuals so situated. Further, the investigation of Officer Meese's suspicion was, by necessity, to be conducted by the two officers in the dark and in proximity to the defendant and his fellow detainee. And the felony for which the officer suspected that the defendant was wanted was drug trafficking, which the court in Warren acknowledged was, if conducted on a large scale, "a type of crime for which an offender would likely be armed." Id. at 605, 718 N.E.2d at 941 (citing Williams, supra, in which the supreme court upheld a protective search initiated in the course of defendant's detention during an investigation of, and in the vicinity of, a large-scale marijuana-growing operation). We conclude that, under the totality of these circumstances, Officer Meese was justified in believing that the defendant was armed and dangerous.
We, therefore, hold that the trial court properly denied the defendant's motion to suppress the fruits of the protective search of the defendant, when his initial detention and the search were effected in conformity with the Fourth Amendment. Accordingly, we overrule the sole assignment of error and affirm the judgment of the trial court.
Hildebrandt, P.J., Painter and Shannon, JJ.
Raymond E. Shannon, retired, of the First Appellate District, sitting by assignment.
[1] The Ohio Supreme Court has "interpreted Section 14, Article I of the Ohio Constitution to protect the same interests [as,] and in a manner consistent with[,] the Fourth Amendment." State v. Andrews (1991),57 Ohio St.3d 86, 87, 565 N.E.2d 1271, 1273, fn. 1, certiorari denied (1991), 501 U.S. 1220, 11 S.Ct. 2833.