DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Marietta Municipal Court judgment of conviction and sentence. After James R. Fleeman, defendant below and appellant herein, entered his no contest plea, the court found appellant guilty of possessing drug paraphernalia, in violation of R.C. 2925.14(C)(1), and of marijuana possession in violation of R.C. 2925.11(C)(3).
 {¶ 2} Appellant assigns the following error for our review:
 {¶ 3} "The trial court erred in denying appellant's motion to suppress evidence obtained during the unlawful detention of the appellant and subsequent search and seizure of the appellant which was warrantless and a direct violation of theFourth Amendment to the United States Constitution and Article 1, Section 14 of the Ohio Constitution."
 {¶ 4} On the evening of April 15, 2000, Ohio State Highway Patrol Trooper Ira Walker drove on State Route 7 between Belpre and Marietta when he clocked a Chevy Blazer driving sixty (60) miles per hour in a fifty-five (55) mile per hour zone. Trooper Walker turned and pursued the vehicle. After Trooper Walker exited his cruiser, he approached the vehicle and asked the driver (appellant) to produce his license and registration. Appellant seemed nervous during the encounter and he did not make eye contact with the officer. Trooper Walker became suspicious and he asked appellant to accompany him to the cruiser where he intended to issue a written warning.
 {¶ 5} When appellant exited his vehicle, Trooper Walker noticed "a large bulge" in appellant's left front pants pocket. Concerned that this bulge might be indicative of a weapon, Trooper Walker performed a protective frisk or pat-down search. During the pat-down, Trooper Walker felt something "squishy." He then asked appellant what was in his pocket. Appellant answered that the bulge was a pack of cigarettes. Appellant then reached into his pocket and appeared to be "moving" or "manipulating" something. After Trooper Walker asked appellant to remove his hand from his pocket, appellant pulled out an open "gray draw-string bag." Not quite convinced that the object was cigarettes, Trooper Walker asked appellant if he could see the bag. Appellant handed him the bag and Trooper Walker looked inside. Trooper Walker detected, by both smell and sight, the presence of marijuana. Trooper Walker placed appellant in the cruiser and called for backup. A subsequent search of appellant's car yielded more marijuana wrapped up in a shirt and concealed behind the vehicle's console.
 {¶ 6} On April 17, 2000, Trooper Walker filed criminal complaints charging appellant with possession of both marijuana and drug paraphernalia.[1] Appellant pled not guilty and filed a motion to suppress evidence. Appellant's motion asserted that Trooper Walker did not have "reasonable and articulable suspicion" to have him exit his vehicle for a pat-down search and then conduct a search of his vehicle.
 {¶ 7} On May 29, 2000, the trial court conducted a hearing to consider appellant's motion. Trooper Walker described the circumstances surrounding the encounter and explained his reasons for patting down appellant's clothing. On July 12, 2000, the trial court determined that Trooper Walker was justified in stopping the vehicle, in asking appellant to step out of the car and then performing a pat-down for weapons. The court found that Trooper Walker did nothing improper by simply asking appellant about the bulge in his pants. As for appellant removing the bag and showing it to the officer, the court found that this action was "voluntary" on appellant's part. Finally, the court concluded that the officer conducted a lawful vehicle search ancillary to the discovery of contraband
 {¶ 8} Appellant subsequently changed his plea to "no contest" and the trial court found appellant guilty of both charges. The court imposed $350 in fines and ordered appellant's driver's license suspended for one hundred and eighty (180) days on each charge, both of which run concurrently with one another. This appeal followed.
 {¶ 9} Appellant argues in his assignment of error that the trial court erred by overruling his motion to suppress evidence. We disagree.
 {¶ 10} Initially we note that appellate review of rulings on motions to suppress evidence present mixed questions of law and fact. See State v. McNamara (1997), 124 Ohio App.3d 706, 710,707 N.E.2d 539, 541; State v. Brite (1997),120 Ohio App.3d 517, 519; 698 N.E.2d 478, 479; also see United States v.Martinez (C.A. 11 1992), 949 F.2d 1117, 1119; United States v.Wilson (C.A. 11 1990), 894 F.2d 1245, 1254. A trial court assumes the role of trier of fact during proceedings on motions to suppress. State v. Payne (1995), 104 Ohio App.3d 364, 367,662 N.E.2d 60, 61-62; State v. Robinson (1994), 98 Ohio App.3d 560,570, 649 N.E.2d 18, 25; State v. Rossiter (1993),88 Ohio App.3d 162, 166, 623 N.E.2d 645, 648. Thus, the evaluation of evidence and credibility of witnesses during those proceedings are issues to be determined by the trial court. State v. Smith
(1997), 80 Ohio St.3d 89, 105, 684 N.E.2d 668, 685; State v.Brooks (1996), 75 Ohio St.3d 148, 154, 661 N.E.2d 1030,1036-1037; State v. Fanning (1982), 1 Ohio St.3d 19, 20,437 N.E.2d 583, 584-585. Factual findings rendered by the court must be accepted by an appellate court unless these findings are "clearly erroneous." State v. Long (1998), 127 Ohio App.3d 328,332, 713 N.E.2d 1, 3; State v. Kennedy (Sep. 30, 1999), Ross App. No. 99CA2472, unreported; State v. Babcock (Feb. 13, 1997), Washington App. No. 95CA40, unreported; also seeUnited States v. Lewis (C.A. 1 1994), 40 F.3d 1325, 1332. That is to say that a reviewing court must accept the factual determinations of a trial court during a suppression hearing so long as those findings are supported by competent and credible evidence. State v. Harris (1994), 98 Ohio App.3d 543, 546,649 N.E.2d 7, 9; State v. Claytor (1993), 85 Ohio App.3d 623, 627,620 N.E.2d 906, 908; also see State v. DePalma (Jan. 18, 1991), Ross App. No. 1633, unreported. The application of the law to those facts, however, is then subject to de novo review.Harris, supra at 546, 649 N.E.2d at 9; State v. Anderson
(1995), 100 Ohio App.3d 688, 691, 654 N.E.2d 1034, 1036; alsosee Lewis, supra 1332; Wilson, supra at 1254. With these principles in mind, we turn our attention to the merits of the case at bar.
 {¶ 11} Appellant asserts that Trooper Walker violated his constitutional rights by conducting a protective frisk or pat-down for weapons, and then asking to see the grey bag appellant retrieved from his pants pocket. Once the officer discovered that the bag was not a weapon, appellant continues, the officer should have "stopped there" and issued the citation (or warning) rather than continuing his investigation. Appellant concludes that any further search contravened his rights under both the United States and Ohio Constitutions and that the evidence should have been suppressed. Again, we disagree.
 {¶ 12} Our analysis begins with the Fourth Amendment to the United States Constitution which guarantees the rights of people to be secure from unreasonable searches and seizures. This protection is made applicable to the states through theFourteenth Amendment Due Process Clause, see generally Mappv. Ohio (1961), 367 U.S. 643, 6 L.Ed.2d 1081, 81 S.Ct. 1684. Similar safeguards are provided under Section 14, Article I of the Ohio Constitution. See State ex rel. Wright v. Ohio AdultParole Auth. (1996), 75 Ohio St.3d 82, 88, 661 N.E.2d 728, 733;State v. Andrews (1991), 57 Ohio St.3d 86, 87, 565 N.E.2d 1271,1273. These guarantees ensure that searches and seizures, conducted outside the judicial process without prior approval by judge or magistrate, are per se unreasonable subject only to a few specifically established and well delineated exceptions.See Thompson v. Louisiana (1984), 469 U.S. 17, 19-20,93 L.Ed.2d 246, 250, 105 S.Ct. 409, 410; Katz v. United States
(1967), 389 U.S. 347, 357, 19 L.Ed.2d 576, 585, 88 S.Ct. 507,514; also see State v. Veit (May 26, 1998), Athens 97CA34, unreported.
 {¶ 13} In the case sub judice, the officer's initial stop of appellant's vehicle for speeding was constitutionally permissible. Traffic violations automatically justify a brief stop and detention. See State v. Kennedy (Sep. 30, 1999), Ross App. No. 99CA2472, unreported; State v. Hart (Dec. 23, 1997), Athens App. No. 97CA18, unreported; State v. McNamara
(Dec. 19, 1997), Athens App. No. 97CA11, unreported; State v.Chelikowsky (Aug. 18, 1992), Pickaway App. No. 91CA27, unreported. Given that the officer lawfully stopped appellant for a traffic violation, Trooper Walker was also justified in asking appellant to exit his vehicle. See Pennsylvania v. Mimms
(1977), 434 U.S. 106, 110, 54 L.Ed.2d 331, 336, 98 S.Ct. 330,333; also see State v. Robinette (1997), 80 Ohio St.3d 234,239, 685 N.E.2d 762, 767. This brings us to the pat-down search issue.
 {¶ 14} For their protection during investigative stops, police officers may conduct pat-down searches for weapons if the officers have reason to believe the suspect is armed and dangerous. See Adams v. Williams (1972), 407 U.S. 143, 146,32 L.Ed.2d 612, 617, 92 S.Ct. 1921, 1923; Terry v. Ohio (1967),392 U.S. 1, 27, 20 L.Ed.2d 889, 909, 88 S.Ct. 1868, 1883; alsosee State v. White (1996), 110 Ohio App.3d 347, 353,674 N.E.2d 405, 409. These protective frisks or pat-down searches generally raise two separate and distinct issues: (1) was the officer justified in performing the pat-down search in the first place; and (2) if the pat-down search was justified, did the police conduct themselves within the lawful scope of the pat-down search. See generally State v. Evans (1993),67 Ohio St.3d 405, 408-416; 618 N.E.2d 162, 166-171; also see State v.Kennedy (Sep. 30, 1999), Ross App. No. 99CA2472, unreported. In the instant case, we resolve both those issues in the affirmative.
 {¶ 15} During the suppression hearing Trooper Walker testified that appellant behaved nervously, that appellant would not make eye contact with him and that appellant was "looking off in every direction but towards [him]." The officer explained that this type of behavior always gave him concern about the "weapon factor." Moreover, when appellant exited his vehicle, Trooper Walker observed a very large and noticeable bulge in appellant's pants pocket in a location where a weapon would most likely be kept. We agree with the trial court's conclusion that the totality of these circumstances provided ample justification for a protective pat-down search.
 {¶ 16} We also believe that Trooper Walker confined himself to the proper scope of a weapons pat-down. Trooper Walker explained how he ran the "flat part of [his] hand" over appellant's pants to make sure that the bulge was "not anything hard like a knife or a gun." We find nothing in the officer's uncontroverted testimony to suggest that the search was overly intrusive or exceeded what was necessary to ensure that appellant was not armed.
 {¶ 17} Having determined that the pat-down was proper, we also find nothing constitutionally infirm with the officer asking appellant about the object in his pocket. We note that appellant was still being detained for the original purpose of the stop (i.e. speeding violation). Law enforcement officers are free to question motorists during the course of a traffic stop about drugs, weapons or any other suspicious activity. See e.g., Statev. Trembly (Jun. 22, 2000), Washington App. No. 99CA3, unreported (Abele, J. Concurring). An officer is not required to limit questions solely to the scope and purpose of the initial traffic stop. Id.
 {¶ 18} We further agree with the trial court that appellant's subsequent actions were voluntary. Appellant responded to the officer's question by telling him that the bulge was from a pack of cigarettes. Appellant then reached into his pocket and pulled out the gray bag where it could be viewed by Trooper Walker. It was uncontroverted that appellant retrieved the bag of his own volition. The officer testified that he did not ask appellant to produce the object. Once appellant had retrieved the bag, Trooper Walker could merely see into the opening of the bag and he immediately recognized the site and smell of marijuana. As the trial court correctly held, this discovery was the end result of appellant voluntarily producing the bag from his pocket.
 {¶ 19} Appellant counter argues that Trooper Walker should have ceased any further investigation once it was discovered that the "squishy" bulge in his pants pocket was not a weapon. He cites to our previous opinions in Kennedy, supra, and Statev. White (1996), 110 Ohio App.3d 347, 674 N.E.2d 405, for the proposition that the officer could not lawfully take the evidence from appellant unless the evidence was immediately apparent as contraband The flaw, however, in appellant's argument is that Trooper Walker did not uncover the contraband himself. Rather, appellant volunteered the contraband in response to the officer's questions. Consequently, we agree with the trial court that under particular facts and circumstances in this case, the encounter did not constitute a violation of appellant's constitutional rights.
 {¶ 20} For these reasons, we find that appellant's assignment of error is without merit and it is hereby overruled. We hereby affirm the trial court's judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY {¶ 21} It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
 {¶ 22} The Court finds there were reasonable grounds for this appeal.
 {¶ 23} It is ordered that a special mandate issue out of this Court directing the Marietta Municipal Court to carry this judgment into execution.
 {¶ 24} If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.
 {¶ 25} The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.
 {¶ 26} A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J.: Concurs in Judgment Only.
Kline, J.: Concurs in Judgment Opinion.
[1] Drug paraphernalia is defined, inter alia, as a container or device for storing or concealing a controlled substance. R.C. 2925.14(A)(10).