OPINION.
{¶ 1} Melissa Loffer pleaded no contest to four charges of drug possession, the most serious being a first degree felony. She was sentenced to concurrent sentences aggregating three years total imprisonment. Her two assignments of error on appeal implicate her mostly unsuccessful motion to suppress.
 {¶ 2} "1. The trial court erred in failing to sustain the motion to suppress in entirety, because the officers in this case did not have a sufficient cause to prolong this `traffic' stop for as long as they did."
 {¶ 3} The police stopped Loffer's truck for three traffic violations, although their purpose was to search the truck for drugs, specifically cocaine. An informant had told the police Loffer transported cocaine in her truck. The informant was a co-worker of Loffer's who said she had personally made cocaine buys from Loffer and said she was concerned about the damage Loffer was doing to other employees by selling cocaine to them.
 {¶ 4} Having observed Loffer commit unsignaled turning violations as she left work, the police stopped her truck and determined to issue warnings, a process that takes, according to the State's testimony, 8-12 minutes.
 {¶ 5} After the traffic stop, Loffer remained in her truck and the two police officers involved ran a check on Loffer's license, checked for outstanding warrants, and began to process the paperwork resulting from the stop.
 {¶ 6} About 5½ minutes after the stop, the officers — Carsner and Jerome — approached Loffer and requested permission to search the truck, which she granted.
 {¶ 7} The search of the truck — which revealed no obvious contraband — lasted about six minutes. The police observed a locked briefcase in the truck which Loffer said belonged to her manager and for which she said she did not have the combination.
 {¶ 8} After completing the search, two police officers returned to their respective cruisers and Loffer got into her truck. While Officer Carsner was still in the process of completing the traffic stop paperwork, Loffer left her truck, a noticeable bulge under her jacket that hadn't been there before. Loffer approached Jerome's cruiser, told him she needed to use the restroom, and started toward a nearby Dairy Queen. As Loffer attempted to leave the scene, Officer Jerome refused to let her go because Officer Carsner was still completing the traffic stop paperwork.
 {¶ 9} Concerned for his safety by the bulge under Loffer's jacket, and Loffer's refusal, when asked, to remove her hand from her jacket, Officer Jerome, with the assistance of Officer Turner, did a pat down on Loffer which produced pills and a brick of cocaine. (After completing the consent search, Officer Jerome had summoned Officer Turner and his drug sniffing dog to the scene).
 {¶ 10} Having credited the police testimony that Loffer was stopped because of traffic violations, the trial court properly determined that the police validly stopped Loffer. Dayton v. Erickson
(1996), 76 Ohio St.3d 3.
 {¶ 11} The issue under this assignment is whether the discovery of the cocaine and pills on Loffer's person resulted from an unlawful prolonging of the traffic stop.
 {¶ 12} Loffer first argues that the police testimony that the average time for completing traffic stop paperwork is 8-12 minutes was unbelievable. The court credited this testimony and it was not unreasonable for it to do so.
 {¶ 13} Loffer next argues that the police unlawfully prolonged the traffic stop when they sought her permission to search the truck without a reasonable, articulable suspicion of further criminal activity other than the traffic violations, citing State v. Retherford (1994),93 Ohio App.3d 586, 601.
 {¶ 14} The police sought Loffer's permission to search her truck about 5½ minutes after the stop, and well within the 8-12 minutes normally required for completion of traffic stop paperwork.
 {¶ 15} In State v. Swope (Nov. 9, 1994), Miami App. No. 93 CA 46, a police officer who had stopped Swope for speeding, and who suspected no other criminal activity, obtained Swope's consent to search his car within the period of time after the stop necessary to complete the speeding citation.
 {¶ 16} We stated in part:
 {¶ 17} "Swope does not contend that Deputy Kirk lacked a legitimate basis for stopping his automobile and issuing him a traffic citation. He does contend that in the absence of any reasonable suspicion that he was involved in criminal activity other than a speeding violation, it was constitutionally impermissible for Deputy Kirk to make inquiries as to other possible criminal activity or to seek and obtain a consent to the search of his automobile.
 {¶ 18} "The trial court specifically found that Deputy Kirk obtained Swope's consent to the search `during a lawful detention of the Defendant.' The testimony of Deputy Kirk, which the trial court was free to accept, supports that determination. In other words, there was testimony to support the trial court's implicit determination that Swope's consent to the search of his car was obtained within a period of time reasonably necessary to process a speeding citation.
"* * *
 {¶ 19} "On March 26, 1994, this court rendered an opinion in Statev. Retherford, Montgomery App. No. 13987, unrep., wherein this court condemned the police practice of seeking a person's consent to search his or her vehicle immediately after issuing a traffic citation and informing the person that he or she is free to leave.
 {¶ 20} "* * * The essence of Retherford is that once the traffic citation is issued, the legitimate basis for detaining the individual ceases. Thereafter, seeking a consent to search unlawfully extends the detention, and any consent to search obtained during that unlawful detention is tainted by that detention. Thus, any evidence seized as a result of that consent must be suppressed as the fruit of the poisonous tree. This court held that the police officer's informing the motorist that he or she is free to go is, as a matter of law, insufficient to terminate the detention when it is the intent of the officer to immediately thereafter seek a consent to search.
 {¶ 21} "* * * The facts as implicitly found by the trial court in this case are different from those in Retherford in that here the consent was obtained during a reasonable period of time for processing a traffic citation, i.e., during a period of lawful detention. Accordingly, Swope cannot avail himself of benefits of Retherford wherein this court found it unnecessary to address the actual voluntariness of Barbara Retherford's consent because of the presumptive taint of the consent resulting from its having been obtained during an illegal detention."
 {¶ 22} Because Loffer's consent to search was obtained within the period of time required to process the traffic warnings, the search of the truck was not required to be supported by a reasonable articulable suspicion of criminal behavior other than the traffic infractions. In other words, these facts are controlled by Swope, not Retherford. Loffer has not argued that her consent was not voluntary.
 {¶ 23} Because the search of the truck was lawful, it did not unlawfully prolong the detention, which was still in progress — because Officer Carsner was still completing the traffic violations paperwork — when Loffer exited the truck with the bulge under her jacket and refused to remove her hand from her jacket, giving rise to the pat down. Loffer does not question the legitimacy of the pat down itself.
 {¶ 24} There having been no unlawful prolonging of a legitimate traffic detention, and justification for the pat down having occurred within the period of reasonable detention, the first assignment of error is overruled.
 {¶ 25} "2. The pills recovered from appellant's pockets should have been ordered suppressed because the officer failed to articulate why they felt like contraband."
 {¶ 26} Under this assignment, Loffer contends that Officer Jerome lacked probable cause to believe certain pills he felt during the pat down were contraband, and that in any event, he only determined that the objects he felt were pills after he manipulated them. If either of these arguments is correct, the State is not entitled to the plain feel exception to the warrant requirement. Minnesota v. Dickerson (1993),508 U.S. 366.
 {¶ 27} Officer Jerome's testimony, as it pertains to the pills, was as follows:
 {¶ 28} "Direct:
 {¶ 29} "THE COURT: You feel the pills or pill bottle?
 {¶ 30} "THE WITNESS: I feel pills. They were loose pills.
"* * *
 {¶ 31} "Q. The fact that they were loose pills, did that make you feel they were some sort of pills?
 {¶ 32} "A. Right. They felt exactly like pills I've felt numerous times before.
 {¶ 33} "Q. Upon feeling those pills, officer, what did you do?
 {¶ 34} "A. At that point, the baggie was removed from the pocket at that point. Continued to try to do a pat down search of the outer garments.
 {¶ 35} "I could also feel another bulge within, inside the jacket, within an inner pocket. And I felt additional pills at that point.
 {¶ 36} "Q. The bulge you are referring to, you went on to state just a moment ago they were additional pills that you felt?
 {¶ 37} "A. Right.
 {¶ 38} "After the front — the length of the front pocket of it, I believe there was on the side of the jacket inside as well.
 {¶ 39} "Q. And, again, are these loose pills you are feeling or pill bottles?
 {¶ 40} "A. No. There's no pill bottles. It was, uh, loose pills. You could feel several pills as you did the pat down search.
 {¶ 41} "Q. Were those pills removed at that time?
 {¶ 42} "A. At that time, she was already in handcuffs. At that point I had told the officers who were involved, I said we need to take her jacket off. I think there's other stuff in there. I can feel like pills in there.
 {¶ 43} "Cross:
 {¶ 44} "But now you are touching the coat and you are actually feeling pills, correct?
 {¶ 45} "A. Yes.
 {¶ 46} "Q. Is it true that you're manipulating the coat to feel the individual pills to be sure that that's what it is?
 {¶ 47} "A. When I felt the initial pills, with a flat hand you can feel they're flat pills right there (indicating).
 {¶ 48} "Q. Then did you manipulate them with your fingers?
 {¶ 49} "A. Yes.
 {¶ 50} "Q. Now you are convinced there are more pills there?
 {¶ 51} "A. Yes. Well, I can feel there are more pills. Yes.
 {¶ 52} "Redirect:
 {¶ 53} "Q. You have also been asked, officer, about manipulation of pills in the jacket pocket?
 {¶ 54} "A. Right.
 {¶ 55} "Q. And you've indicated that you patted down with a flat hand.
 {¶ 56} "A. Right.
 {¶ 57} "Q. Can you tell the Court when, and by when I mean at what point in time during the course of the pat down did it become apparent to you that what you were feeling were pills?
 {¶ 58} "A. Immediately.
 {¶ 59} "Q. Immediately on what?
 {¶ 60} "A. As we are doing — after the arm, the hand is removed from the pocket and we continued to pat down (indicating) around the pocket area. At that time is when I felt the pills.
 {¶ 61} "Q. And what are you doing specifically with your hands when you determine that those are pills immediately?
 {¶ 62} "A. What did I do right after that? I actually pulled it from the pocket.
 {¶ 63} "Recross:
 {¶ 64} "We knew we had pills that were not in pill bottles. And that we know they were prescription pills.
 {¶ 65} "Q. How do you know they were prescription pills? Because you look at them?
 {¶ 66} "A. Right. After I took them out."
 {¶ 67} The trial court did not specifically address whether the pills were lawfully seized from Loffer's person. Read in its entirety, we believe that the trial court could have reasonably determined that Officer Jerome's testimony is to the effect that it was immediately apparent to him that what he felt was pills, and that it was not necessary for him to manipulate the objects to determine that they were pills.
 {¶ 68} The more difficult question is whether Officer Jerome had probable cause to believe the pills he felt were contraband.
 {¶ 69} At the time of the pat down, Officers Carsner and Jerome, believing the truck might contain cocaine, had searched the truck without finding cocaine or any other drugs.
 {¶ 70} Officer Jerome didn't learn the nature of the pills until he extracted the plastic baggie from Loffer's pocket.
 {¶ 71} Thus, the pat down revealed loose pills in two locations on Loffer's person and the narrow question is whether the presence of loose pills rather than pill bottles — coupled with the knowledge that Loffer was a suspected drug trafficker — made the illicit nature of the pills immediately apparent so as to furnish Officer Jerome with probable cause to seize them from Loffer's person. Although it is a close call, we conclude that the answer is yes. The suspicion that Loffer was a drug trafficker was based on information communicated directly to the police by an informant who was a co-worker of Loffer and who said she had made cocaine purchases from Loffer. Thus, this information was entitled to greater weight than had the informant been anonymous. See State v.English (1993), 85 Ohio App.3d 471. The presence of loose pills in two places on Loffer's person coupled with the basis in this case for suspecting Loffer was a drug trafficker — was, in our judgment, enough to enable Officer Jerome to possess a reasonable belief that the pills were illicit, so as to justify their removal from Loffer's jacket.
 {¶ 72} The second assignment is overruled.
 {¶ 73} The judgment will be affirmed.
FAIN, P.J. and YOUNG, J., concur.